# DeCoursey versus The Guarantee Trust and Safe Deposit Company.

1. Premises were leased, the landlord gave the tenant notice to quit and afterwards conveyed part of the premises; the grantee at the end of the term proceeded under Act of March 21st 1772 to recover possession of the part, the lessor not joining nor taking any steps to recover possession of the remainder: Held, that the case was within the act.

2. The object of the Act of 1772 is to furnish a summary proceeding in which the rights of the parties shall be protected and the delays incident to an ejectment avoided.

3. Under the act, a landlord cannot proceed for the possession of part of the demise and hold the tenant for the residue.

4. Where there is an apportionment of the rent, the tenant is liable to separate actions and distresses.

5. A tenant in common may distrain for his share of the rent.

6. A rent-charge may be divided by deed or will, so as to make the tenant liable for several distresses without attornment.

7. After proceedings before the justices and freeholders had been commenced the tenant, under the 13th sect. of Act of 1772, alleged that by the lease he had the privilege of continuing the term for three years, that he had given the lessor notice before the conveyance that he would avail himself of the privilege, and that therefore the title to the premises was disputed and claimed by himself by a title accruing since the commencement of the lease. Held, that this allegation did not bring the case within the 13th section, not showing that the title to the land was disputed by a right accruing since the commencement of the lease.

8. The allegation showed a dispute as to when the term expired, which is one of the questions that the Act of 1772 requires the jury of freeholders to determine.

9. The Act of March 24th 1865, providing that where proceedings in Philadelphia under the several acts allowing landlords to recover full possession

in which a certiorari is allowed. the certiorari shall be a supersedeas, does not apply to proceedings under the Act of 1772.

10. In proceedings under the Act of 1772 the common-law writ of certiorari may issue, but it is not a supersedeas.

11. Acts of March 21st 1772, March 25th 1825, April 3d 1830, December 14th 1863, and March 24th 1865 (Landlord and Tenant), considered and compared.

February 25th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Philadelphia :* No. 131, to July Term 1874.

The proceedings in this case were under the Landlord and Tenant Act of March 21st 1772, sect. 12, 1 Smith's Laws 373, 2 Br. Purd. 879, pl. 17. They were commenced July 22d 1873, by the "Guarantee Trust and Safe and Deposit Company," against Samuel G. DeCoursey, to recover possession of eleven feet of ground on the east side of Carpenter's court.

The company on that day presented their complaint to David Beitler and William. P. Hibbard, Esquires, two aldermen of the city of Philadelphia, setting forth : That the Carpenters' Company of Philadelphia being possessed of a two-story brick building, situate on the east side of Carpenter's court, and next on the north-east of Carpenter's Hall, &c., in Philadelphia, on the 5th of May 1871, demised the same to Samuel G. DeCoursey, for the term of two years from the 1st of July 1871, at the rent of $250 ; that DeCoursey entered in pursuance of the lease and the term was ended ; that on the 31st of March 1873 the lessors required DeCoursey to leave the premises on the 1st of July, and he had refused to comply with the request; that the Carpenters' Company, by deed dated May 21st 1873, conveyed unto the Guarantee Trust and Safe Deposit Company in fee the northernmost eleven feet in front on the said Carpenter's court of the building demised to DeCoursey, and extending eastward the whole depth thereof, bounded northward and eastward by other ground of the Guarantee Company, southward by the remaining part of said building, and westward by Carpenter's court. The complainants requested the aldermen to proceed as is provided by the Act of March 21st 1772, to recover possession of the said eleven feet front on Carpenter's court of said demised premises, conveyed as aforesaid. A precept was issued to the sheriff to summon twelve freeholders, and the defendant, at, &c., on the 25th of July 1873.

The aldermen sat on the 25th and 30th days of July. On the latter day the tenant filed with the aldermen an affidavit and his recognisance, and asked that according to the requirements of the act, the aldermen should forbear to give judgment in the matter of the complaint.

The affidavit referred to the lease which was attached to it and which provided as set out in the complaint, and that there should

" be the privilege to the said lessee of continuing the said lease for the term of three years additional from and after the expiration of the aforesaid term at the rent aforesaid * * *; and at the expiration of the said term yield up and surrender the possession of the said premises, with the appertenances, unto the said Carpenters' Company or their assigns, in the same good order and condition as the same now are, reasonable wear and tear thereof, and accidents happening by fire or other casualties, excepted. * * * It is hereby further agreed, that if the above-named Samuel G. DeCoursey should continue on the above-described premises after the termination of the above contract, then this contract is to continue in full force for another year, and so on from year to year, until legal notice is given for a removal."

The affidavit also averred: that DeCoursey, "availing himself of the privilege given in said lease of continuing the same for the term of three years additional from and after the expiration of the term of two years, thereby created, viz., from and after July 1st 1873, at the same rent, he did, on the 20th day of February last, address to his lessors, the Carpenters' Company, and cause to be delivered to them, a letter, as follows, viz.:—

" 'Philadelphia, February 20th 1873.

\*          \*          \*          \*          \*          \*          \*

" 'Gentlemen: Having concluded to avail myself of the privilege of extending the term of my lease of your office, in accordance with its provisions, I consider it to be courteous and proper to inform you of my intention; although, if my memory serves me, such notice is not actually required.'

\*          \*          \*          \*          \*          \*          \*

" That relying on said lease and his exercise of said privilege as aforesaid, for a continued term of three years from the said 1st of July 1873, he continued to occupy said premises, and was in such occupation when this proceeding was begun.

" This deponent avers, therefore, that the title in and to said premises is disputed and claimed by himself in virtue of a right or title accruing or happening since the commencement of said lease, by deed, to wit, the said lease; that is to say, under or by virtue of the power given therein, to continue the same for three years, which power was exercised after the commencement of said lease, to wit, on the 20th day of February last.

" And this deponent further says, that said Guarantee Trust and Safe Deposit Company claim to be and are the owners of a small portion only of the premises demised by said lease, to wit, of the northernmost eleven feet on Carpenter's court, of the full depth of the lot eastward, as distinctly appears, not only by the complaint in this case, but by the deed offered in evidence by said Guarantee Trust and Safe Deposit Company; that the said

Carpenters' Company continues to be the owner of the reversion in the residue of the demised premises; that said Carpenters' Company has not only taken no proceedings and made no complaint whatever against this deponent to recover possession of any part of said premises, but has expressly refused to permit said Guarantee Trust and Safe Deposit Company even to use the name of said Carpenters' Company to recover said possession.

" And this deponent is advised and believes, and on such advice and belief avers, that it is not within the meaning or intent of the Act of Assembly referred to and relied on in the proceedings in this case, that a grantee of a reversion of a small portion only of premises leased or demised should have the complaint therein allowed against the tenant of the entire premises, and be allowed to ask for a judgment that the entire premises, or any part thereof, shall be delivered to him, even when the owner of the residue of said demised premises does not, as in this case, expressly refuse to take part in proceedings under said act.

" And this deponent further says, that he verily believes that he is entitled to the said premises, and he now here offers and presents a recognisance," * * * and asks the aldermen, &c., to forbear further proceedings.

The record of the proceedings of the aldermen and freeholders, dated July 30th 1873, set out the possession of the Carpenters' Company, the lease of the building to DeCoursey, for the term of two years from the 1st of July 1871, at a rent of $250 ; that DeCoursey entered into possession by virtue of the lease, held during the term and was still possessed of the same; that the term for which the premises had been leased was fully ended and that the Carpenters' Company " being desirous, on the said determination of the said term, to have again and repossess the said premises, for that purpose did, on the thirty-first day of March, A. D. 1873, demand of and require the said Samuel G. DeCoursey to remove from and leave the same at the expiration of the said term ;" that on the 31st of May 1873, the Carpenters' Company conveyed to the Guarantee Company in fee the northernmost eleven feet of the leased building, extending, &c., and bounded, &c.; that DeCoursey refused to comply with the requisition to leave the premises, and that the Guarantee Company had on the 2d of July 1873 prayed the aldermen for a due remedy under the Act of Assembly ; that a precept was issued to the sheriff to " summon twelve substantial freeholders" to appear before the aldermen, at, &c., on the 25th of July 1873, and to summon DeCoursey to appear at the same time and place to show cause " why restitution of the possession of the said eleven feet of the said demised premises should not be made forthwith to the aforesaid, The Guarantee Trust and Safe Deposit Company ;" that the sheriff returned that he had summoned twelve freeholders (naming them),

and also DeCoursey, &c.; that the freeholders appeared and were sworn, and that DeCoursey also appeared.

The record further set out, that on behalf of complainants, a number of witnesses were called and examined; that the lease, deed to Guarantee Company and other documents were produced and admitted in evidence, some of them under objection by De Coursey, and that the inquest adjourned to meet at the same place on the 30th of the same month; that on that day the affidavit (heretofore stated) was presented, and the motion to forbear giving judgment was overruled; that further evidence, oral and documentary, was given both by plaintiff and defendant; part of the documentary evidence was a copy of the notice to quit; the admission was objected to because the original should have been produced.

The record did not give the testimony of the witnesses nor the contents of the documentary evidence; nor did it show, except as appeared by the lease, as accompanying the defendant's affidavit, the clauses relating to its continuance beyond the two years.

The finding was:—

"We, the said aldermen, and the aforesaid freeholders, after hearing and examining the proofs and allegations offered by the said parties, do find that the said The Carpenters' Company, &c., was, on the 5th day of May, A. D. 1871, quietly and peaceably possessed of a certain two-story brick building, containing offices, situate, &c., and being so thereof possessed, on the same day and year aforesaid did demise the said premises to Samuel G. DeCoursey for the term of two years from the 1st day of July, A. D. 1871, at the annual rent of $250; that the said Samuel G. DeCoursey, by virtue of said demise, entered in possession of the said demised premises, held the same during said term, and is still possessed of the same, and that the said term for which the said premises were demised is fully ended, and that the said The Carpenters' Company, desiring, &c., on the determination of the said term, to have again and repossess the said premises, for that purpose did, on the thirty-first day of March, A. D. 1873, demand of and require the said Samuel G. DeCoursey to remove from and leave the same at the expiration of his said term.

"Afterwards the said Carpenters' Company, &c., by deed-poll dated the 31st day of May, A. D. 1873, &c., granted and conveyed unto the Guarantee Trust and Safe Deposit Company, in fee, the northernmost eleven feet in front on the said Carpenters' court of the aforesaid two-story brick building demised to the said Samuel G. DeCoursey as aforesaid, extending, &c. That the said Samuel G. DeCoursey has hitherto refused, and still does refuse, to comply with said demand and requisition, to remove from and leave the said eleven feet of the said premises. And the said freeholders assess the sum of ten dollars for the damages, &c.

"Therefore, it is considered and adjudged by us, the said aldermen, that the said The Guarantee Trust and Safe Deposit Company shall and do recover and have of the said Samuel G. DeCoursey as well the said sum of ten dollars for his damages aforesaid, as $126 for their reasonable costs," &c.

On the same day a writ of possession was issued, which the sheriff executed and returned, "possession given." On the 6th of August 1873, DeCoursey took a certiorari to the aldermen from the Court of Common Pleas; the record was returned and filed in the Common Pleas, September 10th 1873; the following exceptions were filed :—

1. The record shows a case in which a grantee of a small portion of demised premises, proceeds under the Act of March 21st 1872 against the tenant of the whole as his landlord, in respect to said portion, to recover possession of such portion, the original lessor, who is still the owner of the residue, and landlord in respect of the same declining to join in said proceedings, and not being made a party thereto; whereas said Act of Assembly was not intended and cannot be construed to be applicable to such a case, or to permit the tenant to be harassed by divers proceedings by divers owners in respect of divers parts of the demised premises, into which it may have been divided by conveyances subsequent to the lease.

2. The complaint and inquest set forth a notice by the Carpenters' Company to the defendant to quit the entire premises on the 1st day of July 1873; but no notice by the Guarantee Company to quit its portion of said premises is set forth or alleged, and the latter company claiming under a deed subsequent to said notice, cannot avail itself in respect to a portion of the premises of the former company's notice to quit the whole. So that, in fact, the record does not show any allegation or proof of such a notice to quit as is required by the said Act of March 21st 1772.

3. The record shows that the aldermen admitted a copy of the notice from The Carpenters' Company to the defendant, dated March 31st 1873, though no call on defendant to produce the original was made or pretended, and no proof of a search for or loss of said original was made.

4. The aldermen insisted on proceeding with the matter of the said complaint of the said plaintiff, notwithstanding the making and presenting of the affidavit of the defendant, annexed to the record in this case, and the recognisance tendered therewith; whereas, on the coming in of the same, they should have forborne any further proceedings.

5. Because the justices, in preparing and certifying their record of the proceedings before them, wilfully, and with the intent to favor the plaintiff, unlawfully omitted to state therein that the lease given in evidence showed that it was renewable at the option of

[DeCoursey *v.* Guarantee Trust & Safe Deposit Co.]

the tenant, this exceptant; that he had given due written notice of his intention to renew the same before the expiration of the term and before the sale to the plaintiffs by the original lessors, and that such sale was expressly made, subject to the exceptant's rights and the premises so conveyed to the plaintiffs by the terms of their deed, all which facts the exceptant is ready to prove. And he avers, as matter of law, that if they had been stated on the record it would have shown that the said justices had no jurisdiction over the case.

6. That there is a clause in the lease referred to in the complaint, the inquest, and the record, as follows, viz. : "With the privilege of the said lessee of continuing the said lease for the term of three years additional from and after the expiration of the aforesaid term, viz., July the 1st 1873, at the same rent as aforesaid," which clause immediately follows the clause, "For the term of two years from the 1st day of July, A. D. 1871, at the rent of two hundred and fifty dollars per year, to be paid in quarterly portions;" that the latter clause, or its substance, is set forth in the sworn complaint in the inquisition and in the record of the aldermen, as if it were the only clause affecting the length of the term, but the former clause is wholly omitted; that such omission in the sworn complaints of the plaintiffs was wilful, deliberate, and intended for the improper and unlawful purpose of keeping said clause from the record and preventing this defendant at the hearing from relying upon the same, or going behind the judgment to obtain the benefit thereof, and thus unjustly, by color of law, depriving him of possession, without the possibility of presenting to the court the facts under which his rights arise; and that the aldermen and freeholders unlawfully assisting said plaintiffs in obtaining possession, and acting with gross partiality to them, and with the design of unjustly favoring them and injuring said defendant, in violation of law and their duty, omitted said clause from the inquest and the record and from every part of the proceedings, for the same purpose.

On the 13th of September the defendant obtained a rule for a writ of restitution.

On the 8th of October the defendant filed additional exceptions, viz. :—

7. Because the aldermen permitted the presence of one of the counsel of the plaintiff with the jury after the deliberation of the latter, but before the inquisition was signed by them, without notice to and in the absence of the counsel for the defendant.

8. Because the aldermen received from the counsel of the plaintiff, and used after the deliberation of the jury had ended, an inquisition prepared in advance by the plaintiff's counsel, which omitted from the finding of the jury the fact that the lease, as

[DeCoursey *v.* Guarantee Trust & Safe Deposit Co.]

proved, contained the provision for the continuance of the same, mentioned in the former exceptions.

9. Because the jury signed the inquisition thus prepared without reading it or hearing it read.

10. Because members of the jury received illegal fees in the presence of others, who had not then signed, thereby inducing the latter to sign by the expectation of a payment greater than would be allowed-by law.

11. Because the aldermen permitted the presence of strangers with the jury after counsel had retired and before the inquisition was signed.

On the 9th of November 1873, the rule for a writ of restitution was discharged.

On the 7th of March 1874, " Rule granted to take depositions to show if the aldermen and jurors signed the inquisition in the case with knowledge of its contents."

On the 25th of June 1874, the exceptions were dismissed and the proceedings affirmed.

The defendant took a writ of error and assigned the following errors :—

1. The court below erred in dismissing the exceptions to the proceedings of the aldermen and freeholders and in affirming their judgment.

2. The aldermen erred in awarding and issuing a writ of possession for the premises in controversy on the day on which their judgment was entered, and the court below erred in refusing a writ of restitution of said premises.

3–13. In dismissing the eleven exceptions respectively.

*H. Wharton* and *E. S. Miller*, for plaintiff in error.—The proceeding under the Act of 1772 was not intended to apply to a part only of demised premises. To allow of this would enable a landlord, by assignment, to overwhelm the tenant with the multiplied costs of very expensive proceedings. In the several proceedings different judgments might be reached. As the contract of lease is a whole, so the possession under it is a unit. On this ground, an entry of the landlord, on part of the demised premises, is an eviction as respects the whole : Vaughan *v.* Blanchard, 1 Yeates 176. The Act of 1772 was never designed to try questions which belong to an ejectment. The preamble to the 12th sect. of the act is as follows : " Whereas, it frequently happens in this province that lessees or tenants for years or at will, often hold over the tenements to them demised after the determination of such leases, and although such lessees and tenants have been required to deliver up the tenements to the landlord, who had occasion to dwell in his own house or give, &c., the same to another, and have obliged the lessors at great expense to bring ejectments against

their tenant by the delays incident to law proceedings have kept the owner of the house at law and out of possession for several years." Only plain and simple cases, involving nothing but the very points set out in the act, can be passed upon by the tribunal which it constitutes: Blashford *v.* Duncan, 2 S. & R. 486; Steel *v.* Thompson, 3 Penna. R. 34; Cunningham *v.* Gardner, 4 W. & S. 126; Hohly *v.* German Ref. Soc., 2 Barr 293; Newell *v.* Gibbs, 1 W. & S. 499. The affidavit filed deprived the aldermen and freeholders of jurisdiction, and they should have arrested the proceedings. The thirteenth section of the Act of 1772 provides that if the tenant shall allege that the title to the lands in question is disputed by some *other* person, whom he shall name, by virtue of a right or title *accrued* or *happening* since the commencement of the lease, by descent, deed, or will, the proceeding shall be arrested. "Accruing or happening" does not mean "*created*," but only arising in legal effect since the execution of the lease: Steel *v.* Thompson; Newell *v.* Gibbs; Cunningham *v.* Gardner, *supra;* Debozear *v.* Butler, 2 Grant 421. The court below erred in refusing restitution of possession to the defendant. At common law, a certiorari to an inferior court was a supersedeas. 2 Comyn's Dig., *Certiorari* E. It was only by reason of the special character of the Act of 1772, which intended to give landlords a speedy remedy (Grubb *v.* Fox, 6 Binn. 461), that the usual effect of a certiorari was denied. The Act of March 24th 1865, sect. 1, Pamph. L. 750, 2 Br. Purd. 886, pl. 32, entitled "An Act directing that in proceedings in the city of Philadelphia by landlords to recover possession of demised property the certiorari issued shall be a supersedeas," enacts "that in every proceeding or suit brought in the city of Philadelphia under any of the several acts of this Commonwealth to recover the possession of property leased for a term of years, or from year to year, in which a certiorari is now allowed, the said certiorari shall be a supersedeas and the execution upon the judgment in the said suit or proceeding shall be suspended." * * * " Provided, that the said certiorari shall be issued within ten days, &c., and provided that the party applying for the same shall give security" for costs and rent. It is difficult to see how plainer language could be used to cover all landlord and tenant proceedings in this city, and place them on the common-law footing, and give a certiorari in *all* cases of proceedings under the Landlord and Tenant Acts.

*C. S. Pancoast* (with whom was *C. Gilpin*), for plaintiff in error.—If the assigns be assigns of separate parts their actions of ejectment must be separate, and so their proceedings under this act. There cannot be a joinder of the owners of several and distinct tracts in one proceeding. Each must recover possession of his own: White *v.* Arthurs, 12 Harris 96; Watson *v.* Bioren,

31 P. F. SMITH—15

1 S. & R. 229; Co. Litt. 241 b.; Ards *v.* Watkins, Cro. Eliz. 637; Rivis *v.* Watson, 5 M. & W. 266; Harrison *v.* Barnaby, 5 Term R. 246; Gilbert on Rents 172.

The question was, had the term expired July 1st 1873? One that the tribunal was expressly created to pass; complainants claim that the evidence produced showed that the tenant had waived, and estopped himself from asserting any right of extension he might have had. Upon the evidence the finding was for the Trust Company. The certiorari does not bring up the evidence. Even if the court below heard affidavits, they would not be heard in this court: Buchanan *v.* Baxter, 17 P. F. Smith 348; McMullin *v.* McCreary, 4 Id. 230.

Under the 13th sect. of the act in order to remove the proceedings to the Common Pleas, on the ground of disputed title, the right or title must accrue since the commencement of the lease: Haffner *v.* Hoeckley, 3 Brewst. 253; Debozear *v.* Butler, 2 Grant 421.

The Act of 1865 does not apply to the Act of 1772. Under the Act of March 21st 1772, the landlord's right is established by the inquisition of twelve men before two justices. The Act of 1863, Pamph. L. 1125, 2 Br. Purd. 882, pl. 20, which provides a certiorari may issue, that is only to the decision of a single justice without a jury. The other act, which contains no provision as to the issuing of a certiorari, is that of March 25th 1825: 8 Sm. Laws 411, 2 Br. Purd. 886, pl. 31. This gives a remedy where the tenant has removed from the premises, leaves no goods, and refuses to give security for the rent. Here the desertion of the premises is a good reason why a certiorari should not be a supersedeas. The Acts of April 3d 1830, Pamph. L. 187, and April 1849, Pamph. L. 526, 2 Br. Purd. 864, 855, pl. 25, 29, afford a means to obtain the possession for non-payment of rent, in which the certiorari is allowed, there is again only the decision of a single justice.

The Acts of 1772 and 1863 furnish two separate and cumulative remedies for the landlord, and the provisions of the one are not applicable to the other: Duff *v.* Fitzwater, 4 P. F. Smith 226; Haines *v.* Levin, 1 Id. 414.

Mr. Justice PAXSON delivered the opinion of the court, March 13th 1876.

The record in this case presents but three questions that need be discussed. The first is, whether the assignee of a portion of the demised premises is entitled to proceed under the Act of 1772, to recover the possession of such portion. It appears that the Carpenters' Company of the city of Philadelphia, by lease dated May 5th 1871, demised to Samuel G. DeCoursey, the plaintiff in error, a property on the east side of Carpenters' court, for the term of two years from the 1st day of July 1871, reserving rent;

that the said DeCoursey entered into possession of the demised premises; that on the 31st of March 1873, the said Carpenters' Company gave him notice to remove at the expiration of his said term; that subsequently, by deed dated the 31st of May 1873, the said company granted and conveyed to the Guarantee Trust and Safe Deposit Company, defendants in error, a lot of ground which included eleven feet of the demised premises. Thereupon the last-named company proceeded to recover the possession of the said eleven feet, under the Act of 1772, upon the notice previously given by the Carpenters' Company. The latter did not join in the proceeding, nor did they take any steps to recover the possession of the residue of the said demised premises.

Our own cases do not furnish a distinct ruling upon the very point, yet its solution is not difficult. The mischief which the Act of 1772 was intended to remedy is clearly expressed in the preamble to said act: "And whereas, it frequently happens within this province that lessees or tenants for years, or at will, often hold over the tenements to them demised after the determination of such leases, and although such tenants have been required to deliver up the tenements to the landlord or lessor, who had occasion to dwell in his own house, or give, grant or demise the same to another, yet they have most unjustly refused so to do, and have obliged the lessor or landlords, at great expense, to bring ejectments against their tenants, and by the delays incident to law proceedings have kept the owner of the house at law, and out of possession for several years. For preventing; therefore, such unjust practices, be it enacted," &c.

Prior to the passage of this act a landlord had no remedy against his tenant holding over after the expiration of his term, but the action of ejectment, a tedious and expensive proceeding. The object of the Act of 1772 was to furnish a summary proceeding in such cases, in which the legal rights of the parties should be carefully protected and yet avoid the intolerable delays incident to a suit of ejectment. This case comes clearly within the mischief which the act sought to remedy. We have a demise, a notice to quit, a sale by the landlord, and a refusal by the tenant to surrender the possession to the landlord's vendee at the end of the term. Does the fact that the proceedings were for a part of the demised premises only, oust the jurisdiction of the aldermen? It may be conceded that the landlord cannot proceed under this act to recover the possession of a part of the demised premises and hold the defendant as tenant for the residue. No such attempt was made in this case. The notice to quit was for the entire premises. At the end of the term the landlord had a right to proceed for the recovery of the whole. How is the tenant injured, because the proceedings are only for the recovery of a part? The purchaser of the eleven feet would have been entitled to his writ

of ejectment to recover it. This case is within the mischief of the act, as well as its very words : "It shall be lawful for such a lessor or lessors, his or their heirs and assigns, to complain," &c. The assigns may be assigns of separate parts. If originally held in common, the parties may come to hold separate parts by partition. The owner of a part becomes the landlord *quoad* that part. By a grant of the reversion, the rent, which is an incident, passes with it. When there is an apportionment of the rent the tenant is subjected to separate actions and distresses: Co. Lit. 241. A tenant in common may distrain for his share of the rent, and it was held in Rivis *v.* Watson, 5 Mees. & W. 266, that a rent-charge may be divided by will or deed, so as to make the tenant liable, without attornment, for several distresses. "If I make a lease of three acres, reserving three shillings rent, as I may also of the whole reversion, so may I dispose of any part of it. Since it is a thing in its nature severable, and the rent, as incident to the reversion, may be divided too, because that being made in retribution for the land, ought, from the nature of it, to be paid to those who are to have the land on the expiration of the lease." Lord Chief Baron Gilbert on Rents 172. If the reversion may be divided and the rent apportioned, and each part of the apportioned rent recovered by distress or an action of debt, it is not easy to see the force of the argument urged on behalf of the plaintiff in error that it would be subjecting him to an undue burden to hold that he may be proceeded against under the Act of 1772 for a portion only of the demised premises. It is clear that an ejectment may be brought against him. But the very object of the act was to avoid the expense and delay incident to this form of proceeding. We are clearly of opinion that this case comes within the spirit, if not the very letter, of the Act of 1772, and the aldermen had jurisdiction.

This brings us to the second question. It is contended that the affidavit filed by the plaintiff in error deprived the aldermen and freeholders of jurisdiction, and that they should have proceeded no further in the cause. The thirteenth section of the Act of 1772 provides that if the tenant shall allege that the title to the lands and tenements in question is disputed and claimed by some other person or persons, whom he shall name, in virtue of a right or title accrued or happening since the commencement of the lease, so as aforesaid made to him, by descent, deed, or from or under the last will of the lessor, the proceedings shall be arrested.

The affidavit filed by the plaintiff in error does not bring the case within the provisions of the above section. It does not show what the proviso in the act expressly requires, that there was a dispute as to the title to the lands ; that the title was disputed and claimed by some other person or persons named, in virtue of a right or title accrued, or which had happened since the commencement of the lease, by descent, deed or under the last will of the

[DeCoursey *v.* Guarantee Trust & Safe Deposit Co.]

lessor. What it does show is a dispute as to when the term expired. This is one of the questions which the Act of 1772, by its express terms, requires the jury of freeholders to determine. The cases cited by the plaintiff in error upon this point do not sustain him. In Blashford *v.* Duncan, 2 S. & R. 480, no rent was reserved in the lease, which is necessary to give jurisdiction under the Act of 1772. Steel *v.* Thompson, 3 Penna. R. 34, was clearly not within the act; so far from being the mere case of a demise at a certain rent, it presented unusual complications. Says GIBSON, C. J., "Here the relation of the parties was contingent, if not doubtful, from the beginning, and when application was made to the justices it was not easy, as it appeared at the trial, to determine its nature or extent." Again, "The contract had more the aspect of one for the disposal of an interest in land on specified terms than of a lease by the actual proprietor to his tenant at a stipulated rent." In Newell *v.* Gibbs, 1 W. & S. 496, the tenant offered to show that the title of Gibbs, the landlord, had expired by lapse of time, and that since the commencement of the lease the title had vested in a certain William Griffis by virtue of a purchase at a sheriff's sale of the interest of Ezekiel Griffis, who was the lessor of Gibbs, the landlord. Cunningham *v.* Gardner, 4 W. & S. 110, is against the plaintiff. The affidavit of the tenant alleged that he had a right to the lands, under the lease during his natural life, in consideration of which he was to erect buildings and improve the premises, and that he had done so. Said HUSTON, J.: "This case presents a simple question of fact. Did Mr. Kirkpatrick agree to give a lease for life or for years to the tenant? This is the question as stated by the landlord, and by the tenant, and by the counsel before us. It would not be easy to show that twelve freeholders, summoned for the purpose from the county, would not be as competent to decide this fact as twelve jurors drawn from the wheel as jurors. The law is made for such cases. It is no more difficult than to decide whether a parol lease was for one year or for two years. It is a simple question of fact, and no legal knowledge required to the decision of it." We may well apply the above language to the present case. The contention was, whether under the stipulations of the lease, the term of the plaintiff in error was fully ended. This was a mere question of fact, simple in its nature, and entirely within the province of the jury to decide. It involved no question of title within the meaning of the Act of 1772.

The third question is whether the court below erred in not awarding restitution to the plaintiff in error. The record shows that the aldermen gave judgment for the plaintiffs (defendants in error) for possession of the eleven feet, with damages and costs; that they then proceeded upon the same day to issue a writ of possession, which the sheriff executed and returned, "possession given."

A certiorari was taken to the proceedings, and a petition was presented to the court below for a writ of restitution, on the ground that, under the Act of 1865, a writ of possession could not properly issue within ten days of the judgment. The court below decided that the Act of 1865 does not apply to proceedings under the Act of 1772. Whether it does so apply is the precise point involved.

The Act of 24th March 1865, Pamph. L. 150, provides that "in every proceeding or suit brought in the city of Philadelphia, under any of the several acts of this Commonwealth, by landlords to recover possession of property leased for a term of years, or from year to year, in which a certiorari is now allowed, the said certiorari shall be a supersedeas," &c.

It is necessary to a proper understanding of this act to consider briefly the law as it stood at the time of its passage. The Act of 1772 makes no mention of a certiorari. Such writ is not allowed by its terms. Yet it has been repeatedly held that the common law writ of certiorari might issue under said act, but it does not operate as a supersedeas: Grubb *v.* Fox, 6 Binn. 460. The reason for this is that proceedings under the Act of 1772 are *sui generis*, the Act of Assembly intending to give landlords a speedy remedy. While the common law right to a certiorari to remove proceedings under this act has never been denied, this court decided at a very early day that such writ did not operate as a supersedeas for the reason above given.

Next in order came the Act of 25th March 1825, Pamph. L. 114, providing for the case of tenants who shall remove from the demised premises without leaving sufficient property on the premises to secure at least three months' rent, and who shall refuse to deliver up possession, &c. This act contains no provision for a certiorari.

The Act of April 3d 1830, Pamph. L. 187, provides a mode in which a landlord may proceed to obtain possession of the demised premises for non-payment of rent. In said act it is provided "that nothing herein contained shall prevent the issuing of a certiorari with the usual force and effect." To say that this proviso does not allow the certiorari in the sense of expressly giving it, is a refinement of criticism. While the phraseology is peculiar, giving it somewhat the form of a negative pregnant, it evidently provides for and allows a writ of certiorari with its usual force and effect.

The Act of December 14th 1863, Pamph. L. 1125, allows an appeal, and also a certiorari to "remove the proceedings of the justices, as in other cases."

Thus stood the legislation when the Act of 1865 was passed. It is contended that the effect of the latter act is to make the certiorari a supersedeas in every proceeding or suit brought in the city of Philadelphia by a landlord to recover the possession of property leased for a term of years. If this be the proper construction of the Act of 1865, then the Act of 1772 is rendered comparatively

[DeCoursey v. Guarantee Trust & Safe Deposit Co.]

useless, and the serious mischiefs against which for over one hundred years it has protected us, have returned to vex the present generation, as they must seriously have disturbed the framers of said act; for its avowed object was to give some proceeding, *sui generis*, and unknown to the common law, by means whereof a landlord who had occasion to use or occupy his own house, or to sell or demise the same, might recover possession thereof at the termination of the lease without the delay and expense of an ejectment. If a certiorari is interposed to stay proceedings under this act, its value as a remedial statute is seriously impaired, if not wholly gone.

If the legislature intended by the Act of 1865 to make a certiorari a supersedeas in all landlord and tenant cases, it was very easy to have said so in few and plain words. They have not done so. On the contrary, the intent is clear to restrain the operation of the act to certain cases only. Else why the words, " in which a certiorari is now allowed." Evidently the legislature had no reference to the common law writ of certiorari when they used this language. Such writ is of right, and may issue of course, but it does not, as has already been said, suspend proceedings in a landlord and tenant case. It was undoubtedly the writ of certiorari allowed by statute that was in the contemplation of the legislature when the Act of 1865 was passed. Such a writ was allowed in both the Acts of 1830 and 1863. Yet in neither of those acts is it said in express terms that the certiorari shall be a supersedeas.

There are reasons why the law should be explicit upon this point. Both of the last-named acts are a wide departure from the course of procedure under the Act of 1772. It will be remembered that in the latter case the cause is heard before two aldermen and a jury of twelve freeholders, to be selected by the sheriff. In no form of summary proceedings known to the law is so much care exercised to guard the rights of the parties, and secure a fair trial as under the Act of 1772. The provision for a freehold qualification for the jurors was intended, at least, to secure a jury of more than the average grade. If such juries are not composed generally of as good material as they ought to be, it is no fault of the law, but of its officers charged with its execution. In such proceedings the tenant has a fair trial before a jury of his peers, and it is no hardship to him to allow the judgment of such a tribunal upon so simple a question as whether his term is fully ended, to be enforced, notwithstanding a writ of certiorari. So, as to the Act of 1825. It gives the remedy where the tenant has removed from the premises, leaving no goods thereon, refuses to give security for the rent, and yet declines to surrender the possession. A certiorari is clearly not needed in such cases. But in the Acts of 1830 and 1863 the proceedings are entirely without a jury; under that of 1830 before two aldermen, under that of 1863 before a single alderman.

[DeCoursey *v.* Guarantee Trust & Safe Deposit Co.]

It is not singular, therefore, that, inasmuch as both ·these acts are in derogation of the common-law right of trial by jury, the legislature deemed it essential to place the question at rest whether the writ of ˙certiorari which had been theretofore allowed by said acts should operate as a supersedeas. This we regard as the proper construction of the Act of 1865. To extend it to the Act of 1772, ˎin which a statutory certiorari had never been allowed, would be, in our judgment, to carry the Act of 1865 beyond its manifest intent as well as its express terms. An ingenious argument was made on behalf of both the plaintiff and defendant in error upon the grammatical construction of said last-named act. We are unable to see that the view we have taken of it does any violence to its proper reading. When the legislature intend so radical a change in existing legislation as to make a certiorari a supersedeas to proceedings under the Act of 1772 they will probably say so in express terms, and not leave it to rest upon implication, or the yet more uncertain rule as to which of two antecedents shall govern a verb.

The questions raised by the remaining assignments need not be discussed. Most of them refer to matters *dehors* the record.

The judgment is affirmed.