Adams' Estate.

Argued December 14, 1939.

Before Keller, P. J., Cun-
ningham, Baldrige, Stadtfeld, Parker, Rhodes and
Hirt, JJ.

*Albert H. Heimbach,* with him *Ben Branch,* for appel-
lant.

*Carl E. Kirschner,* with him *J. C. Loose* and *A. S.
Loose,* for appellee.

Opinion by Hirt, J., April 10, 1940:

On February 19, 1938, Rosie E. Adams, died testate
and in her will provided for the equal distribution of
her property among three of her four children and her
one grandchild, and appointed her daughter, Anna
Andrews, executrix. The latter duly qualified and filed
an inventory whereupon appellant, a son and legatee of
the deceased, petitioned the court below for an order
on the executrix to file a supplementary inventory, to
include as part of the estate certain bonds allegedly
owned by the decedent, not appearing in the inventory
as filed. An answer was filed in which these bonds were
claimed by the executrix personally and by her sister,
Edna Sauers, as a gift from their mother. Depositions
were taken and from the testimony the court below
found as a fact that decedent had made a valid gift of
the bonds to her daughters, inter vivos. A final order
was entered on June 19, 1939 refusing the prayer of the
petitioner. This appeal followed.

In a proceeding of this nature, the orphans' court

properly exercised jurisdiction in deciding the question of ownership of the securities. *Leadenham's Estate,* 289 Pa. 216, 137 A. 247. And no duty was imposed upon the court to award an issue to the common pleas under section 21(a) of the Act of June 7, 1917, P. L. 363, 20 PS 2581 since no evidence was produced raising a controlling disputable question of fact: *Walkinshaw's Estate,* 275 Pa. 121, 118 A. 766. The case turns on the construction of the following written instrument, admittedly signed and delivered by the decedent to her daughters about six weeks before her death: "January 10, 1938. Know all men by these presents that I have given to my daughters, Anna I. Andrews and Edna M. Sauers, $2,000. North American Edison 5-1969 Nos. 1161 & 11642, $500. Canadian Pacific R. R. 4¼-1960 No. 01813 to be used for my care and in appreciation of the care they are giving to me."

Appellant contends that decedent delivered the bonds to her daughters, not as a gift to them, but in trust for her support, because the writing states that the bonds were "to be used for my care." These words coupled with the gift to the daughters "in appreciation of the care they are giving to me" created some ambiguity in the writing and the court below properly held that parol evidence was competent to show what the decedent intended. Every written instrument is to be interpreted according to the subject-matter. "To this end, courts take the language employed and apply it to the surrounding circumstances exactly as they believe the parties applied it": *Wright v. The Monongahela Nat. Gas Co.,* 2 Pa. Superior Ct. 219. In *Miller v. Fichthorn,* 31 Pa. 252, p. 257, it is said: "In the very nature of things, the judge must receive, by admissions or by testimony, all the information that is necessary, in order to put him into a position to interpret and construe the writing with intelligence; that is, to apply it to persons, things and events, according to the intention under which it was written."

The bonds in question had been kept in a bank in

Hazleton in a safety deposit box "leased to Mrs. Rose E. Adams or Edna Sauers." About a year before her death, decedent went to the bank and had some conversation with Mabel Swoyer, an employee of the investment department of the bank, in regard to these securities. In the course of this conversation decedent stated that "her two daughters had always done a lot for her and had been kind to her" and she wanted them to have the bonds and by other similar statements indicated an intention to give the bonds to them. On January 10, 1938 this witness suggested to the daughters that they should have some written evidence of the gift and from her recollection of the conversation with the decedent as to terms, she prepared the writing quoted above, which was executed by the decedent the same day. Decedent was not present when the writing was prepared and died about six weeks later. The phrase "to be used for my care" was inserted in the writing by the bank employee because she thought "in case Mrs. Adams needed the money it could be used for that purpose" but she had no recollection that decedent had imposed any restriction or condition on the gift.

The bonds had been removed from the safety deposit box by the daughter, Edna Sauers, and had been placed in a new box in the name of both of the donees and it is not denied by appellant that at the time the above writing was executed, the securities in question were in the possession of decedent's daughters named therein. The writing recites that the gift had been consummated and it is well settled that a delivery of the subject matter of a gift may be proved by the declarations of the donor, and when the donor declares that the gift has been made, it is implied that delivery and every other formality necessary to create a gift have taken place: *Sherman v. Stoner*, 78 Pa. Superior Ct. 189.

While the burden of proof was upon decedent's daughters to establish the gift (*Weaver, Exr. v. Welsh*, 325 Pa. 571, 191 A. 3) the quality and quantity of proof required to establish a gift varies greatly with the cir-

cumstances, and less evidence is necessary when the gift is from parent to child: *Yeager's Estate,* 273 Pa. 359, 117 A. 67; *Kaufmann's Estate,* 281 Pa. 519, 127 A. 133. It is significant here that the sole basis for the inference of a delivery of the bonds upon a trust, is a clause inserted not by decedent nor suggested by her, but written into the instrument by a disinterested person, gratuitously, in what she believed to be the best interest of the donor. This clause "to be used for my care" does not nullify the succeeding phrase "and in appreciation of the care they are giving to me" and the latter is meaningless except as indicating the intention of making a gift. The two clauses together, import an absolute gift, unconditioned as to delivery and vesting of title, but with an obligation attached to provide care for the donor out of the value in the bonds. On the acceptance of the gift the donees assumed this obligation. Since an absolute delivery of the bonds to the donees with intent to pass title, was made out, the donor reserving only the right to look to the donees for support, the transaction may be sustained as an executed gift: *Funston v. Twining,* 202 Pa. 88, 51 A. 736; *Riegel v. Wooley,* 81 Pa. 227. There is no evidence in the record from which it may be inferred that the donor ever was in need of assistance from her daughters, from the date of the gift until her death. Hence, we may assume, in the absence of testimony to the contrary, that the obligation either was performed or that it was waived by the donor: Thorton on Gifts, §100 p. 80.

We, therefore, are of the opinion that the court below properly found that both essential elements of a gift, inter vivos, were present: (1) an intention or purpose to give; and (2) a delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property but also to invest the donee with complete control over the subject matter of the gift: *Finn, Exr. et al. v. Finn,* 322 Pa. 196, 185 A. 847.

Decree affirmed at the costs of appellant.