Menamin v. Automobile Banking Corp., Appellant.

Argued September 27, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*A. E. Hurshman,* for appellant.

*D. J. Dolan,* for appellee.

Opinion by Cunningham, J., November 23, 1932:

The proceeding below was a sheriff's interpleader under which the issue was whether, on June 5, 1928, the title of a certain automobile, described as a Moon sedan, was in Francis C. Menamin, the claimant, or

in the defendant in the execution, a corporation under the name of Philadelphia Moon, Incorporated.

On June 5, 1928, the Automobile Banking Corporation entered a judgment for $1,948.91 against Philadelphia Moon, Incorporated, doing business at No. 842 North Broad Street, and on the same day issued an execution thereon; the sheriff levied on the Moon sedan, then stored in the Fernwood garage at No. 5934-38 Baltimore Avenue; upon Menamin's claim that the car belonged to him and not to Philadelphia Moon, Incorporated, an issue was framed with him as plaintiff and the Automobile Banking Corporation as defendant; the car was appraised at $1,400 and claimant gave bond in double that amount.

The trial resulted in a verdict in favor of Menamin and Automobile Banking Corporation, the execution creditor, has appealed. Errors assigned are, (1) refusal of its seventh point for charge, (2) refusal of binding instructions and (3) denial of its motion for judgment n. o. v.

The main question involved is whether binding instructions should have been given for the execution creditor. Menamin was the only witness called on his side of the case and the single witness examined on the other did not contradict him in any material matter. The facts, as we shall recite them, are undisputed; the entire controversy is over their legal effect.

Philadelphia Moon, Incorporated, was a sales agent for Moon cars at its place of business on North Broad Street; Menamin was its attorney and had also lent it money; C. W. Haller, after serving as its president for a few days, became its general manager. Early in 1928 this corporation became financially involved and unable to pay its rent. Shortly before April 27th it had arranged a sale of the sedan now in question to a customer who paid a deposit on the purchase price. The car was not then in its possession but had been stored by the manufacturer with the Western Manu-

facturing Company and, in order to obtain the sedan for delivery to the customer, it became necessary for the sales agent to settle with the manufacturer. Application was made by Philadelphia Moon, Incorporated, to the William Penn Title and Trust Company for a loan of $1,600. By reason of the applicant's financial condition, the trust company refused to, make the loan unless Menamin would indorse the note. Upon his agreeing to indorse, the loan was made for two days and secured by the note of Philadelphia Moon, Incorporated, dated April 27, 1928, and indorsed by Menamin. The car was then lifted from storage by Haller and taken, not to the sales agent's place of business, but to the Fernwood garage, 5934 Baltimore Avenue, a public garage near Haller's residence.

On April 30th the note was renewed in the same form for five days. About this time the customer refused to complete the purchase of the car and forfeited the deposit with the result that Philadelphia Moon, Incorporated, had the car on its hands. It is not disputed that Philadelphia Moon, Incorporated, then had full title to the car and possession through its general manager, Haller, at whose instance it was placed in the Fernwood garage.

In order to obtain a renewal of the note held by the trust company the following acts were performed. On May 9, 1928, Haller took the car, bearing the dealer's tags of Philadelphia Moon, Incorporated, out of the Fernwood garage and he and Menamin drove it to the office of a notary where the title certificate then held by Philadelphia Moon, Incorporated, was assigned to Menamin. They then drove the car to the trust company's place of business, exhibited the assignment to the president, and secured a renewal of the note for five days, in the same form and with Menamin's indorsement.

The assigned certificate of title does not seem to have been sent to Harrisburg until after the levy on June

5th; the stamps indicate it was received there June 8th and the new certificate returned to Menamin four days later.

From the office of the trust company Menamin and Haller drove the car back to the Fernwood garage. Menamin paid the storage then due and had the account transferred to his name; he gave Haller one set of keys to the car in order that he might demonstrate it to a possible purchaser; Menamin had two other cars and wanted to dispose of the sedan. He advertised it for sale and used it several times but never took it to his own garage at his residence; both he and Haller drove it occasionally for demonstration purposes; no effort was made prior to the levy to procure a certificate of title in Menamin's name and the dealer's tags of Philadelphia Moon, Incorporated, remained on the car. It was sold the following December, through Haller, to F. A. Steimle for $900; the note held by the trust company was renewed several times and after the sale of the car was paid by Menamin by reason of his indorsement. About ten days after the purchase of the car by Steimle it was transferred to Haller's wife who was secretary and treasurer of Philadelphia Moon, Incorporated.

This case necessarily turns upon the nature and purpose of the alleged delivery of the car to claimant at the trust company's place of business on May 9, 1928, and the character of his possession thereafter.

The principles of law applicable to the issue here raised were stated for this court fully and clearly by HENDERSON, J., in Bowersox v. Weigle & Myers, 77 Pa. Superior Ct. 367, and need not be repeated in detail. For the purposes of this case, it is enough to say that for a valid sale of personal property, readily susceptible of actual delivery, there must be, not only a delivery, but a continuing possession in the vendee for such time as would reasonably give notice to all concerned of the change of ownership. There must be a

substantial change of possession; where the possession is concurrent or the vendor appears to occupy the same relation to the property as he formerly did, the transfer is void as against creditors. The law does not set up an unbending test of the sufficiency of delivery and transfer of possession to be applied in all cases; consideration must be given to the character of the property, the use to be made of it, the situation of the parties, the usages of trade, and the nature and object of the transaction. A highly important inquiry in this case relates to the situation and business relations of the parties and the real nature and object of the transaction.

Looking at the bare facts, as we have gathered them from the undisputed evidence, it is at once apparent that claimant had a heavy burden because, in so far as third persons were concerned, the possession of the car was practically the same after as before the alleged sale. Philadelphia Moon, Incorporated, never had the sedan at its place of business on Broad Street, but, as soon as it acquired title from the manufacturer, stored it in the Fernwood garage under the control of Haller, as its general manager. The only indications of any change of ownership, disclosed by the evidence, were the driving of the car by Haller to the office of a notary, where the certificate of title was assigned to Menamin, and the joint taking of the car to the office of William Penn Title and Trust Company, where, while it stood at the curb, they went into the building and upon exhibiting the assignment to the president of the trust company secured a renewal of the note; together, they then drove the car back to the Fernwood garage, had the account for storage transferred to Menamin, and left the car where it had always been since delivery by the manufacturer, each taking a set of keys.

The failure of Menamin to make any effort, until about June 8th, to comply with the law relative to

the registration of the car and the obtaining of a certificate of title in his own name is not conclusive upon the question of its ownership (Braham & Company v. Steinard Hannon Motor Co. et al., 97 Pa. Superior Ct. 19), but in this case it is a circumstance strongly indicative of an absence of intent on the part of Menamin to make an outright purchase of the car. Permitting the dealer's license tags to remain on the car after its return to the garage from the trip to the trust company is a similar, but probably weaker, circumstance. The execution creditor, however, was not entitled to the affirmance of its seventh point, wherein it asked the trial judge to charge that claimant, by permitting the dealer's tags to remain on the car, was estopped from asserting any title to it and the verdict must therefore be for the execution creditor. The point went entirely too far and the first assignment of error is dismissed.

There is some confusion in the testimony of the claimant relative to the nature of his alleged possession after the return of the car to the garage. In his direct examination he said: "I left it in the custody of Mr. Haller who was the agent of the Philadelphia Moon, Incorporated, and he tried to sell it and eventually did sell it in December and we had to sell it for $900 making a net loss of $700 to me." In the course of his cross examination this testimony appears: "Q. Now you left that car in Mr. Haller's possession for purpose of sale? A. I never left it in Mr. Haller's possession. It was never out of my possession. Q. It was in that garage? A. In the garage stored in my name with the express order that nobody was to have that car except Mr. Haller to take it out for demonstration purposes. It was to be sold. I did not see the car. I had two cars and that was enough for me."

Different constructions might, therefore, be placed upon some of the testimony, and different inferences might be drawn from some of the facts. Ordinarily,

such considerations would take the case to the jury, and, as claimant has the verdict, he is now entitled to the benefit of every favorable inference. The best evidence, however, of the inferences which he seeks to have drawn with respect to the real nature of the transaction is his own characterization of it. With respect to the purpose of the parties in taking the car to the office of the trust company, claimant testified as follows under cross examination: "Q. Do you or not know as attorney for the company that there was a levy made by the landlord about that time on the premises of the Philadelphia Moon, Incorporated, on North Broad Street? A. Yes, that is what I said, I knew that. That is what put them out of business, and, as I said also, that is why I had to go through this rigmarole of going out there with the car. Q. You knew of that fact prior to the 1st of June, did you not? A. Certainly I knew it on the 9th of May. We discussed it with the president of the William Penn Title Company and he made us bring the car physically in front of his place before he would pass this [renew the note] because he wanted to be sure that this car was being turned over to me."

Another quotation from claimant's testimony reads: "Q. You simply took that car as collateral on the loan you made on it? A. That is it exactly, on the loan I had made on it." This plain, definite, statement by claimant of the real nature of the transaction, coupled with his characterization of the joint acts of Haller and himself, when possession of the car is alleged to have been given to him, as a "rigmarole" to secure the renewal of the note and with the fact that the note bearing claimant's indorsement was renewed from time to time for a period of six months, seems to us, in the light of all the facts, to negative the contention that a sale of the car to claimant was effected which would be valid as against the creditors of Philadelphia Moon, Incorporated.

It is only proper to say that some of the material facts, to which we have referred, were not brought to the attention of the court below as clearly as they might have been. Upon a careful consideration of claimant's testimony a majority of the members of this court are of opinion that he was not entitled to have his case submitted to the jury; binding instructions should have been given in favor of appellant or judgment n. o. v., subsequently entered in its favor.

The judgment in favor of the claimant is reversed and the record remitted to the end that a proper judgment, under the provisions of the bond, may be entered in favor of the appellant notwithstanding the verdict.