Automobile Banking Corporation *v.* Atlas
Automobile Finance Corporation,
Appellant, et al.

Argued October 5, 1937.

Before

Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Wm. P. Davis, Jr.,* for appellant.

*Thomas O. Haydock,* with him *Albert G. F. Curran,* for appellee.

Opinion by Cunningham, J., December 17, 1937:

This action of replevin was tried in the court below by a judge sitting without a jury; its subject matter was a Chrysler roadster automobile. The plaintiff, Automobile Banking Corporation (hereinafter referred to as the A. B. C. Co.), founded its writ upon the allegations that one George P. Forman was, on August 6, 1932, "the owner and lawful possessor of" the car, and upon that date leased the same to Frank Draper, Sr., and Frank Draper, the original defendants (hereinafter called the Drapers), under a bailment lease, providing, inter alia, for the payment of twelve monthly installments of approximately $44 each as rental; that upon the same date Forman assigned the lease to plaintiff, including all his interest in the car as bailor and in the rents reserved in the lease; and that on or before December 22, 1932, the Drapers defaulted under the terms of the lease in that, without the knowledge or consent of the plaintiff, they allowed the car to be re-

moved out of their possession and out of the county of Delaware and to be used for purposes other than for their own use. Contending that by reason of such default it was entitled to repossess itself of the car, the A. B. C. Co. issued the present writ, fixing the value of the car at $400. The sheriff did not find the car in the possession of the Drapers, but in the custody of one John Dilks, whose name was added to the writ. Thereupon, the Atlas Automobile Finance Corporation (hereinafter referred to as the Atlas Co.), upon the averment that Dilks was its representative, was permitted to intervene and to be made a party defendant. The Atlas Co. then gave a counter bond and retained possession of the car.

The trial resulted in a finding in favor of the plaintiff, the A. B. C. Co., against the intervening defendant, the Atlas Co. alone, for the value of the car ($400) together with interest to the date of trial and the amount of premiums paid by plaintiff on its bond, or a total verdict of $536.

As to the Drapers, the original defendants in the writ, the trial judge, after remarking that they had not urged "any right to title or possession as against the plaintiff," said he made no finding with respect to them and added that "any disputes between the defendants and the added defendant should be litigated in other proceedings."

This appeal is by the intervening defendant, the Atlas Co., from the judgment entered upon the finding, after its motions for judgment in its favor n. o. v. or a new trial had been dismissed. We have concluded that the judgment must be reversed.

It is not controverted that Forman was at an earlier date, namely, on July 21, 1932, the lawful owner of the automobile, had possession of it, and held a valid certificate of title free from any encumbrance. The contention of the Atlas Co., as set forth in its affidavit of

defense and supported by its evidence at the trial, was that by reason of certain intervening transactions between Forman and it, about to be detailed, Forman was not the owner of the car when he delivered possession thereof to the Drapers under the above mentioned lease of August 6, 1932, pleaded and relied upon by the plaintiff, and had no legal right to dispose of the car in any manner. The controlling issues in this case arise out of these intervening transactions. As gathered from the pleadings and the evidence, they were as follows.

On July 26, 1932, Forman, being then the lawful owner as above stated of the car, brought it to the Atlas Co. and wanted to borrow $450 upon it. Atlas declined to lend the money in that manner. It was then arranged that Forman should execute a bill of sale of the car to Atlas for a consideration of $425, and deliver the car into its possession. This was done and the car was stored during that night in a garage of the Atlas Co. The next day Atlas and Forman executed a bailment lease under the terms of which the car was leased to Forman. The lease provided for weekly rental payments by him of $11 each for a period of fifty weeks, commencing with August 2, 1932, or a total rental of $550. Contemporaneously with these transactions, Forman assigned to Atlas his certificate of title, B3292429, and a reassignment of this certificate from the Atlas Co. to Forman was made when the bailment lease was executed. As a result, a new certificate, E3292429, was obtained, naming Forman as owner and showing an encumbrance of $550 in favor of the Atlas Co. Under the authority of Section 203 of "The Vehicle Code" of May 1, 1929, P. L. 905, 75 PS §33, this certificate was held by the Atlas Co. awaiting the payment of its encumbrance before the certificate could be turned over to Forman. It was still in the possession of Atlas at the time of trial. Forman, having been

given possession of the car by the Atlas Co. under its bailment lease, took it away and made only seven of the fifty weekly rental payments therein provided for.

Forman's business was dealing in used automobiles. He took the car here in question to a parking lot in the city of Chester where he displayed used cars for sale and where the Drapers dealt for and obtained possession of it, under the above mentioned bailment lease from Forman to them, on August 6, 1932. In this connection it may be noted that the Drapers traded in to Forman an old car at a value of $357 and made four of the twelve payments, specified in the lease, to plaintiff, as Forman's assignee, before any controversy arose; these payments aggregated $179.

In order to clothe himself with an ostensible right to dispose of the car free from the $550 encumbrance due the Atlas Co., it was essential that Forman be able to exhibit to prospective purchasers a clear certificate of title. As above stated, the valid certificate of title to this car, E3292429, showing this encumbrance, was in the possession of that company.

On August 4, 1932, two days before the date of the lease from Forman to the Drapers, there was filed with the Bureau of Motor Vehicles of the Department of Revenue, upon a form authorized by the Code and entitled, "Application for Correction of Certificate of Title when Encumbrance is Removed," a paper purporting to be a certificate signed by "Atlas Auto. Finance Corp., I. Walgin, President," to the effect that the encumbrance of $550, in favor of the Atlas Co., had been paid and satisfied in full, and that the owner (Forman) was therefore entitled to a corrected certificate of title. In the above quotation of the purported execution of the certificate the words "Atlas Auto. Finance Corp.," and the word "President" are in typewriting and the signature, "I. Walgin," in ink. The paper further purported to have been subscribed and sworn

to before Albert F. Friech, a notary public residing at "420 W. 2d Street, Chester, Pa."

At the same time Forman, knowing that he could not get the genuine certificate, E3292429, from the Atlas Co. for submission to the bureau for correction in accordance with the above purported certificate of payment of the encumbrance, applied for a duplicate certificate, falsely assigning as the ground for his application that the original had been "mislaid." Upon the presentation to the bureau of these false and fraudulent papers, Forman obtained, on August 5th, a duplicate certificate of title to the car, showing no encumbrance thereon. It was this certificate, with the word "Duplicate" plainly stamped thereon, which he exhibited to the Drapers when they were negotiating for the car.

The Atlas Co. asserted, and requested the trial judge to find, that the signature, purporting to be that of its president upon the certificate of payment of the encumbrance, "was not signed by I. Walgin, President of Atlas, and is a palpable forgery." The answer of the trial judge was, "Declined, as a question of fact and resolved against I. Walgin."

This finding to the effect that the certificate of payment had been signed and sworn to by Walgin is not only without any support whatever in the evidence but is also in direct conflict with all the evidence upon this feature of the case. Walgin testified positively that he had not signed the certificate and that he had never appeared before Albert Freich, the notary before whom the paper purported to have been acknowledged. The plaintiff did not call the notary and there was no contradiction of Walgin's statements. Several additional witnesses, familiar with his handwriting, testified the signature was not Walgin's. Seven admittedly genuine signatures of Walgin were received in evidence. An inspection and comparison of these signatures with the signature to the certificate demonstrates, even to the

untrained eye, that the certificate was not signed by Walgin. He also testified he knew nothing about the removal of the encumbrance or the obtaining of the duplicate certificate until about eight weeks after it had been issued. His further testimony was that the original certificate of title, E3292429, had never been out of his possession.

Of course, we are not a fact finding tribunal, nor do we weigh evidence or pass upon the credibility of witnesses, but the finding that Walgin's purported signature to the certificate was not a forgery is so clearly unsupportable that it would merely be a waste of time to return the record for a formal finding in accordance with the uncontradicted evidence.

In the light of the facts we have just recited, it is not difficult to understand why Forman disappeared shortly after their occurrence and was not available to any of the parties to the trial. In this connection it is proper to say there was no evidence that the plaintiff or the Drapers had any actual knowledge of the forgery of the certificate or of the fraudulent representation by means of which the duplicate certificate of title was obtained.

The plaintiff and the Drapers contended, and the trial judge agreed with them, that the transactions between Forman and the Atlas Co. on July 26th and 27th did not constitute a valid sale of the car by Forman to the Atlas Co. and a subsequent leasing thereof by it to Forman, because the Atlas Co. did not continue in possession of the car for such a length of time as would reasonably amount to notice to any person interested that it was the owner of the car. In other words, they asserted that, as a matter of law, the alleged sale to the Atlas Co. was colorable and constructively fraudulent as to creditors of, and bona fide purchasers from, Forman. They make the same argument here and rely upon such cases as: *Barnett v. Cain,* 88 Pa. Superior

Ct. 106; *Horten v. Colonial Finance Corp.,* 90 Pa. Superior Ct. 460; *Menamin v. Auto. Banking Corp.,* 107 Pa. Superior Ct. 372, 163 A. 53; *Sterling Commercial Co. v. Smith et al.,* 291 Pa. 236, 139 A. 847; Wendel v. *Smith et al.,* Ibid. 247, 139 A. 873; *Shipler et al. v. New Castle Paper Products Corp.,* 293 Pa. 412, 143 A. 182; *Callahan v. Union Trust Co. of Pittsburgh,* 315 Pa. 274, 172 A. 684.

No rights of creditors are involved, as in *Bowersox v. Weigle & Myers,* 77 Pa. Superior Ct. 367, an automobile case decided in 1921, but if the chattel here in question had been a vehicle other than a motor vehicle there would be considerable force in their contention with respect to the rights of a bona fide purchaser from Forman.

But the transactions between Forman and the Atlas Co. did not relate to the ownership and possession of an ordinary chattel; their subject matter was a self propelled vehicle, the ownership, operation and transfer of which are regulated in detail by the provisions of "The Vehicle Code" of 1929, supra, and (insofar as this case is concerned) the amendments thereto prior to 1933. Another important and distinguishing feature of this case is that Forman was neither a manufacturer, jobber, nor dealer in new motor vehicles (none of whom need obtain certificates of title to motor vehicles before sale thereof); as stated, his business was dealing in used cars displayed upon a parking lot. This distinguishes the case at bar from the line of cases of which *Root v. Republic Acceptance Corp.,* 279 Pa. 55, 123 A. 650, and *Hoeveler-Stutz Co. v. C. M. Sales,* 92 Pa. Superior Ct. 425, are examples. The motor vehicle with which we are here concerned had gone from the show room and into use upon the highways long before the present controversy arose.

By reason of the prohibitions contained in Section 201 of the Act of 1929, supra, as amended by the Act of

June 22, 1931, P. L. 751, 75 PS §31 (Supplement) and the other provisions of the code, Forman, as a dealer in used cars, could not lawfully own and dispose of the car until a certificate of title thereto had been obtained, not by forgery and misrepresentation, but as provided for by the then existing and comprehensive system of regulation of the ownership, registration, operation and sale of motor vehicles. The transactions of July 26th and 27th between Forman and the Atlas Co. were valid as between themselves. We are not prepared to say that Forman could, by the commission of the crimes disclosed by the evidence, wipe out the interest (*General Motors Acceptance Corp. v. B. & O. R. R. Co.,* 97 Pa. Superior Ct. 93) of the Atlas Co. in the car and give a good title to the Drapers and plaintiff.

Our holding upon the unusual and, fortunately, rare factual situation now presented is not inconsistent with what we said in *Braham & Co. v. Steinard-Hannon Motor Co. et al.,* 97 Pa. Superior Ct. 19, to the effect that a certificate of title does not necessarily "determine the absolute ownership of the car." The Braham case involved a construction of the less stringent provisions of prior legislation (Acts of 1923 and 1925), and that opinion must be read in connection with the facts of that case. No forgery or false representations were present there.

Here, Forman's apparent authority to dispose of the car free from all encumbrances was not conferred upon him by any voluntary act of commission or omission upon the part of the Atlas Co., but was obtained by him through forgery and fraudulent imposition upon the bureau. His title was not merely defective; it was so permeated and tainted with fraud that he could not, under the provisions of "The Vehicle Code," pass any better title to the Drapers by the sale, or to the plaintiff under his assignment of the Draper lease, than he had.

Even if we should adopt, for the sake of argument, the contention of plaintiff to the effect that the invalidity of Forman's title cannot be set up as against the Drapers and plaintiff because they were bona fide purchasers without notice of his fraud, there is still an obstacle in the pathway of the plaintiff which bars it from recovery in this action.

As indicated at the outset of this opinion, plaintiff based its right to possession of the car upon a default by the Drapers under the terms of their bailment lease from Forman—his interest therein, as bailor, having been assigned to plaintiff. As has been frequently pointed out, replevin begins as an action in rem and the plaintiff in order to succeed must prove not only title to, but also an immediate right to possess, the chattel. "The issue in a replevin action is confined to the question of title and the exclusive right of possession": *Blossom Products Corp. v. National Underwear Co.*, 325 Pa. 383, 191 A. 40. The bailor under a bailment lease, or his assignee, can recover in replevin only by showing right of possession through some breach of the bailment contract: *White Co. v. Union Transfer Co. et al.*, 270 Pa. 514, 113 A. 432.

An examination of this record discloses that the Drapers filed an affidavit of defense in which they specifically denied any default by them in the performance of the terms of the lease and particularly denied the allegations of plaintiff in its declaration that they had allowed the car to be removed out of their possession and out of the county of Delaware in violation of the terms of the lease. In their affidavit the Drapers averred that the car "was removed from [their] garage by persons unknown to [them] with force and without [their] knowledge or consent." There was evidence at the trial supporting these averments and the finding by the trial judge that the plaintiff at the time the writ issued was entitled to possession of the car as against

the Drapers is not sustained by the testimony. There are indications in this record that the Drapers and plaintiff, under some arrangement between them, are standing together against the Atlas Co. But in addition to filing an affidavit of defense they presented written requests for findings relative to their interest in the car. It is true that the Drapers have not appealed, but we cannot close our eyes to the fact that the plaintiff, under the testimony, has not shown that it had an immediate right to possess the car when it instituted its action. In either aspect of the case plaintiff is not entitled to an affirmance of the judgment appealed from.

Judgment reversed and here entered for appellant.