## Motor Vehicle Certificates of Title

JOHN D. KILLIAN, 3d, Legal Assistant, FREDERIC G. ANTOUN, Deputy Attorney General, and THOMAS D. McBRIDE, Attorney General, October 31, 1957.—You have requested an opinion concerning the procedure to be followed by the Bureau of Motor Vehicles of the Department of Revenue with regard to the issuance of a certificate of title applied for by an encumbrance holder upon repossession of a motor vehicle. Since September 15, 1949, the policy of the Bureau of Motor Vehicles has been that where there is a variance in dates, amounts, names or other material particulars, between the original encumbrance as recorded and the contract submitted by the applicant for a certificate of title, the Secretary of Revenue will refuse to issue a certificate of title. This policy is based upon a letter of advice issued to your department from the Department of Justice on July 18, 1949.

Motor vehicle financing is accomplished mainly through the security devices of the conditional sale and the bailment lease with an option to purchase. Loans are also made using a motor vehicle as collateral through the security device of the chattel mortgage. Upon the execution of any of these security transactions, the seller, lessor or mortgagee records his lien for the purchase price, rental or loan, with interest and charges, with the Department of Revenue, and a certificate of title is issued in the name of the buyer, lessee or mortgagor and delivered to the encumbrance holder.

The application for a certificate of title is filed under section 202 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §32, which provides inter alia:

"(a) Application for a certificate of title shall be made upon a form prescribed and furnished by the department; and shall be accompanied by the fee prescribed in this act; and shall contain a full description of the motor vehicle, trailer, or semi-trailer, the actual or bona fide address and name of the owner, together with a statement of the applicant's title, and of any liens or encumbrances upon said motor vehicle, trailer, or semi-trailer, and whether possession is held subject to a chattel mortgage or under a lease, contract of conditional sale, or other like agreement."

The certificate of title in these situations is delivered to the encumbrance holder under section 203 of The Vehicle Code, supra, 75 PS §33, which provides, inter alia:

"(b) Where there are no liens or encumbrances upon the motor vehicle, trailer, or semi-trailer, the certificate of title shall be delivered to the owner, but otherwise it shall be delivered to the person holding the first lien or encumbrance upon said motor vehicle, trailer, or semi-trailer, and shall be retained by such person until the entire amount of such first lien or encumbrance is fully paid by the owner of said motor vehicle, trailer, or semi-trailer. The outstanding certificate of title, when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, subsequent mortgagees, lienors, encumbrancers and purchasers that a lien against the motor vehicle, trailer, or semi-trailer exists, and failure to transfer possession of the vehicle, trailer, or semi-trailer shall not invalidate said lien or encumbrance."

Upon default by the conditional buyer, bailment lessee or chattel mortgagor, the seller, lessor or mort-

gagee frequently exercises his contract rights to repossess the motor vehicle rather than execute on a judgment or bring an action of replevin. Subsequently, the seller, lessor or mortgagee applies to the Bureau of Motor Vehicles for a transfer of title. This application is submitted under section 208 of The Vehicle Code, supra, 75 PS §38, which provides inter alia:

". . . The secretary, upon surrender of the outstanding certificate of title, . . . when the said certificate of title . . . is held by a person holding a first lien, encumbrance, or legal claim thereon, upon presentation of satisfactory proof to the secretary of ownership and right of possession to such motor vehicle . . . and upon payment of the fee prescribed in this act, and presentation of an application for a certificate of title, may issue to the applicant . . . a certificate of title thereto. . . ."

Proof of ownership and right of possession normally is supplied by a certified copy of the sales contract, bailment lease or chattel mortgage.

The problem of whether to issue a new certificate of title arises at the point where inspection of the contract, lease or mortgage by the Bureau of Motor Vehicles reveals a variance either with respect to the sum involved in the original security transaction or the names of the parties to the transaction. The following example will illustrate the problem:

A, a married man, desires to purchase a motor vehicle, finance a portion or all of the sales price and take title to the vehicle in his sole name; C, the seller or lender, in order to secure payment of the debt or loan, requires A to execute a note and security agreement, in the form of a conditional sales contract, bailment lease or chattel mortgage; C, in addition, requires that B, A's wife, also execute the note and security agree-

ment and assume a joint and several obligation thereon. Though title to the motor vehicle is in A, both A and B appear on the contract, lease or mortgage as coöbligors. A and B subsequently default and C repossesses the vehicle. A discrepancy is then revealed between the parties on the financing contract and the name on the original certificate of title at the time the secretary is requested to issue a new certificate of title in the name of the encumbrance holder, C.

With regard to the situation of a variance or discrepancy in dates and amounts, the letter of advice issued by this department on July 18, 1949, reached the conclusion that the Secretary of Revenue was reasonably justified in refusing to issue a certificate of title until such discrepancy was explained by affidavit of the encumbrance holder that the contract attached to the application for a certificate constitutes the existing contractual relationship between the repossessor and the registered owner, and the basis for its asserted right of ownership and possession. Since under section 205 of The Vehicle Code, supra, 75 PS §35, the secretary may cancel any certificate of title and issue a corrected certificate upon good cause appearing, where a certificate has been issued in error to a person not entitled thereto, or contains incorrect information for any reason, it is proper for the secretary to require a similar showing of good cause before issuing a repossession certificate where a patent variance in dates or amount appears suggesting "incorrect information due to any cause" sufficient to empower the secretary to cancel a certificate. In this respect the letter of advice of July 18, 1949, continues to represent the view of this department.

The letter of advice also represents the view of this department with regard to discrepancies in the spell-

ing of names, use of different initials, and other such variances in the name appearing in the security device and the certificate of title. On the other hand, the letter of advice of July 18, 1949, does not represent the view of this department in concluding that when a variance appears between the parties to the contract creating the encumbrance and the original certificate of title, the secretary must require more than the affidavit of the repossessor that, in substance, B was a mere surety or guarantor. Such policy needlessly requires a repossessor to bring appropriate proceedings under a writ of fi. fa. pursuant to a judgment or an action of replevin, and furnish evidence thereof with the application for a certificate of title. This conclusion was based upon a restrictive interpretation of section 201 of The Vehicle Code, supra, 75 PS §31, and a misconstruction of the intent of the legislature in enacting such provision. Section 201 provides inter alia:

"(a) No person who is a resident of this Commonwealth shall own a motor vehicle, trailer, or semi-trailer, in this Commonwealth unless a certificate of title therefor shall have been obtained as provided in this act. . . ."

An "owner" of a motor vehicle is defined in section 102 of The Vehicle Code, supra, 75 PS §2, as: "A person or persons holding the legal title of a vehicle; or, in the event a vehicle is the subject of a chattel mortgage or an agreement for the conditional sale or lease thereof or other like agreement, with the right of purchase upon performance of the conditions stated in the agreement, and with an immediate right of possession vested in the mortgagor, conditional vendee or lessee, then such mortgagor, conditional vendee or lessee shall be deemed the owner for the purpose of this act."

The certificate of title is made a necessary incident to ownership of a motor vehicle by section 201 of The Vehicle Code: Majors v. Majors, 153 Pa. Superior Ct. 175, 33 A. 2d 442 (1943), affirmed 349 Pa. 334, 37 A. 2d 528 (1944). But the certificate does not create ownership, nor is it a warrant of ownership or muniment of title: Cunchula v. Harris & Sauer, 34 Erie 90 (1950); Macrone v. Macrone, 34 Del. Co. 293 (1947); Bricker v. Laubach, 50 Lanc. 167 (1946). Nor is it conclusive evidence of ownership; it is evidence only of prima facie right to possession of a motor vehicle: Weigelt v. Factors Credit Corp., 174 Pa. Superior Ct. 400, 101 A. 2d 404 (1954); Automobile Banking Corporation v. Atlas Automobile Finance Corporation, 129 Pa. Superior Ct. 501, 195 Atl. 441 (1938); Sunbury Finance Co. v. Boyd Motor Co., 40 Dauph. 199 (1934), affirmed 119 Pa. Superior Ct. 412, 180 Atl. 103 (1935); Anewalt v. Reber, 43 Berks 129 (1951).

In Majors v. Majors, 349 Pa. 334, 37 A. 2d 528 (1944), the Supreme Court stated the purpose of section 201 of The Vehicle Code as follows, page 338:

"We are aware the primary purpose of the act was not designed to establish the ownership or proprietorship of an automobile, but rather to register the name and address of the person having the right of possession, and to furnish persons dealing with one in possession of an automobile a means of determining whether such possession was prima facie lawful. . . ."

The purpose of the section thus being not to establish conclusive evidence of title, but rather to prevent theft and commerce in stolen cars and to assist owners in recovery of cars, it does not logically follow that the legislature intended that all persons identified with the original transaction as conditional buyers, lessees or mortgagors should appear as coöwners in the certificate of title. If the conclusions expressed in the letter of advice are to be followed, the Secretary of Revenue

would not be justified in issuing a certificate of title in the first instance, unless he examined the original security device to determine that all parties obligated therein are to be included as owners on the certificate of title. Having thus reached a conclusion opposite to that of the said letter of advice with regard to the legislative intent of section 201 of The Vehicle Code and the practical effect of such conclusion, we cannot allow the policy to continue whereby a certificate of title will be refused where there is an additional party included in the note and security agreement as a joint and several obligee.

It should be understood that where, as in the above illustration, A and B, as husband and wife, execute a note and security agreement and thereby assume a joint and several obligation, there is no actual *variance* in names since the "several" obligation of A appearing on the security agreement is the basis of C's right of ownership and possession where A's name appears as owner on the original certificate of title. This several obligation of the registered owner of the motor vehicle is equally as great as would be his liability under a note and security agreement executed solely by him.

It is, therefore, the opinion of this department and you are accordingly advised that the Secretary of Revenue may issue a certificate of title to an encumbrance holder - repossessor upon satisfaction of the statutory requirements of section 208 of The Vehicle Code, even though a variance appears in dates, amounts, names or other material particulars, between the original encumbrance as recorded and the contract submitted by the applicant for a certificate of title; provided, however, that where any such variance appears, the Secretary of Revenue may refuse to issue a certificate until the particular variance is explained to the satisfaction of the secretary by affidavit of the appli-

cant that the contract attached to the application constitutes the existing contractual relationship between the repossessor and the registered owner, and is the basis for the applicant's asserted right of ownership and possession.

You are further advised that it is not a *variance* in dates, amounts, names or other material particulars where an additional party's name is placed on the note and security agreement as a joint and several obligor, and in such case you are obliged to transfer title without the necessity of forcing the repossessor to take court action prior to issuance of a certificate of title.