EDWARD B. C. BAILEY *vs.* NEW BEDFORD INSTITUTION FOR SAVINGS, WALTER H. FAUNCE, administrator *de bonis non* with the will annexed, claimant.

Bristol.    March 26, 1906. — October 15, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Gift.    Savings Bank.    Trust.*

To pass the title to property by gift there must be a delivery and an acceptance actual or constructive.

A widow made a deposit in a savings bank in her name " in trust for E." E. was her nephew, whose first name at her request had been changed to that of her deceased husband. At the time of making the deposit she signed a declaration that no written trust existed, that the deposit was to be payable to her or her

order during her life, and after her death to E. She made statements to E.'s
father and mother and to other persons that she had remembered E. well and
that she wanted him to have the money that she had deposited in the bank for
him. She retained the possession and control of the bank book until her death,
and left a will in which no provision was made for E. *Held*, that there was no
evidence of a delivery and acceptance of a gift during the lifetime of the de-
positor or of anything tantamount to a delivery and acceptance, and that the
deposit continued to be the depositor's as long as she lived and when she died
passed to the executor of her will.

CONTRACT by Edward B. C. Bailey, a minor, by his guardian
Lydia W. Bailey, to recover a deposit of $500 in the defendant
entitled " Betsie B. Chase in trust for Edward B. C. Bailey."
Writ dated March 1, 1904.

The defendant admitted that it held the deposit named in the
declaration, and upon its motion Walter H. Faunce, adminis-
trator *de bonis non* with the will annexed of the estate of Betsie
B. Chase, intervened as claimant and was made a party to the
action.

At the trial in the Superior Court before *Holmes*, J. it ap-
peared that the plaintiff lived in Middleborough and that Mrs.
Chase, who made the deposit, lived in New Bedford, and died
there on November 27, 1902; that Mrs. Chase had on deposit in
her own name with the defendant on April 16, 1902, $641.49,
and on that day deposited $358.51, making $1,000. This
deposit was No. 107423. On April 16, 1902, she opened two
new accounts with the defendant, namely, " Betsie B. Chase in
trust for Arabella B. Robertson " being deposit No. 124115, and
·" Betsie B. Chase in trust for Edward B. C. Bailey" being de-
posit No. 124116, the one in suit. Deposit No. 124115 was
closed by Mrs. Chase withdrawing it on August 23, 1902.
Deposit No. 124116 remained intact up to the time of her
death. Deposit No. 107423 was closed by the administrator.
At the time of making the deposit in suit Mrs. Chase signed
a statement such as was required by the bank in every case of a
deposit in trust, as follows:

" New Bedford 4th mo. 16, 1902.

" Having deposited money in the New Bedford Institution for
Savings as trustee for Edward B. C. Bailey as represented by
Book No. 124116 I hereby declare that no written trust exists,
and that by the terms of said trust said deposit and its additions

and dividends is payable to me or my order during my life, and after my death to the said Edward B. C. Bailey.

"Witness,                                    Betsie B. Chase.
    "Carrie N. Ellis."

This statement remained in the custody and possession of the bank.

Luther S. Bailey, the father of the plaintiff, testified that the boy was born on April 13, 1897, and was named Robert; that when the plaintiff was six or eight months old the witness's sister, Betsie B. Chase, said that if they would let her name the boy she would make him a nice present of money, and the boy's name was changed to Edward Bevery Chase Bailey, Edward Bevery Chase having been the name of Mrs. Chase's husband, who died in January, 1896; that Mrs. Chase acted affectionately toward the boy; that in 1897 she made the boy a present of $30 and afterwards at two different times of $5 which was deposited by the witness in the Middleborough Savings Bank for the boy; that when the boy was five years old he was to have a birthday party to which Mrs. Chase was invited but did not come because she was sick and the party was given up by reason of the illness of the boy's mother; that about a week later the witness and his wife saw Mrs. Chase and in speaking of the birthday party she said "that she had not forgotten him; said she didn't send him any present but she hadn't forgot him"; that the first time the witness ever saw the deposit book No. 124116 was after the funeral of Mrs. Chase; that he was executor of Mrs. Chase's will until removed, and was succeeded by Frank A. Milliken as special administrator.

Lydia W. Bailey, the mother of the plaintiff, and appointed his guardian on December 14, 1903, testified that Mrs. Chase wanted the boy to have a birthday party when he was five years old, and was very anxious that he should because he had never had one; that she made arrangements for the party and Mrs. Chase was invited, but sent word that she was not able to come; that the witness was taken sick and the boy did not have the party; that about a week after April 13, 1902, the witness and her husband saw Mrs. Chase and she wanted to know if he had

had the party and the witness told her "No"; that Mrs. Chase said she was sorry because she had told the people at New Bedford that he was going to have a party and the witness was never willing to do things for Edward; that she had remembered him and remembered him well; that the boy's name was changed because Mrs. Chase said that she should remember him well.

Mary A. Goodspeed, a sister of Betsie B. Chase, testified that she came from Brockton to New Bedford on July 8, 1902, and took care of her sister, who was sick in bed with a cancer, until she died; that during this time Mrs. Chase kept her bank books and other papers in a box under the head of her bed; that the box was kept locked and Mrs. Chase kept the key in a pocket book under her pillow most of the time, but always in her immediate custody and possession; that some time in July, 1902, Mrs. Chase had been making her will and among other things said to the witness that "she had deposited the money for Edward and she wanted him to have it"; that on August 23, 1902, she made her last will; and later in the same month she said "just the same, that she deposited the money for Edward and wanted him to have it, and she didn't care to change that part of it"; that shortly before she died "Mrs. Chase had a gold watch that was Mr. Chase's and I asked her if she was going to give it to Edward for his name, and she said No, that she had given it to Mr. Chase's nephew, that the money that she had put into the bank for Edward would be what she wanted him to have"; and that after Mrs. Chase died the witness delivered to the executor the box containing her books and papers, including the bank book in suit.

Mrs. Rebecca C. Reynolds, a neighbor of Mrs. Chase, testified that some time in the spring of 1902 she called upon Mrs. Chase and found Mrs. Lydia W. Bailey and the boy present and so declined to go in; that Mrs. Chase brought the boy to her and said, "this is the little boy I have named for my husband and he is to be remembered for his name."

Mrs. Lydia A. Tilden, another neighbor, who lived in another tenement in the same house with Mrs. Chase, testified that Mrs. Chase always spoke as though she thought a great deal of the boy; that he was named for her husband; that "Mrs. Chase

said she was invited to a birthday party, and I said ' of course you are going,' and she said she didn't know as she would be able to go, and I didn't know whether she went or not, but I saw her three or four days later and asked her if she went and she said — No, she wasn't able to, but she had remembered him with a good substantial sum."

No provision was made for the plaintiff in Mrs. Chase's last will.

The claimant upon notice produced at the trial book No. 124116 representing the deposit in question.

The claimant objected to all the evidence of statements made by Mrs. Chase to the different witnesses, but they were admitted and the claimant excepted.

This was substantially all the evidence in the case.

At the close of the evidence and after hearing the parties, the judge was of opinion that not enough had been done to pass the title to the bank book and ·deposit to the plaintiff, and directed a verdict for the claimant. By agreement of the parties he reported the case for determination by this court. If upon the foregoing statement of the evidence a jury would be authorized to find a verdict for the plaintiff, the verdict was to be set aside and judgment was to be entered for the plaintiff in the sum of $567.94; otherwise, judgment was to be entered for the claimant.

The case was submitted on briefs at the sitting of the court in March, 1906, and afterwards was submitted on briefs to all the justices except *Rugg*, J.

*A. Auger*, for the plaintiff.

*F. A. Milliken*, for the claimant.

KNOWLTON, C. J. The money on deposit in the savings bank was originally the property of the testatrix, and there is no doubt that it remained hers up to the time of her death, unless there was a perfected gift of it to Edward B. C. Bailey in her lifetime. · It is clear that the mere deposit of it in her name, as trustee for him, did not deprive her of her ownership and control of it. The statement signed by her at the time of making the deposit implies that it remained her property, and subject to her control, although it indicates an intention on her part that so much, if any, of the deposit as she allowed to remain

there to the time of her death should become his property. But she could not pass the title to property after her death by such a deposit, or by such a statement. Unless it passed in her lifetime, it did not pass at all. To pass property by a gift, there must be a delivery of it to the donee, and acceptance of it by him, or something which is equivalent to such a delivery and acceptance. This has been decided in many cases in which the question has arisen in reference to a deposit in a savings bank in the name of another, or as trustee for another. In *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Mass. 228, 231, Mr. Justice Wells said: " There must be some act of delivery out of the possession of the donor, for the purpose and with the intent that the title shall thereby pass." " If the act of transfer be complete on the part of the donor, subsequent acceptance by the donee before revocation will be sufficient." In *Scrivens* v. *North Easton Savings Bank*, 166 Mass. 255, it is held that, in addition to what was written in the bank book, " The testator must have indicated to the plaintiff in some form of language that the deposit then belonged to him, although he could not have it until his father's death, and that this was assented to by him." In the opinion in *Alger* v. *North End Savings Bank*, 146 Mass. 418, 422, we find similar language. Other cases of like import are *Clark* v. *Clark*, 108 Mass. 522; *Ide* v. *Pierce*, 134 Mass. 260 ; *Nutt* v. *Morse*, 142 Mass. 1 ; *Sherman* v. *New Bedford Five Cents Savings Bank*, 138 Mass. 581 ; *Booth* v. *Bristol County. Savings Bank*, 162 Mass. 455 ; *Welch* v. *Henshaw*, 170 Mass. 409 ; *Cleveland* v. *Hampden Savings Bank*, 182 Mass. 110; *McMahon* v. *Lawler*, 190 Mass. 343.

In the present case, although the testimony tends to show an intention of the testatrix that the boy Edward should have this money after her death, there is no evidence of a delivery and acceptance of a gift of it in her lifetime, or of anything tantamount to a delivery and acceptance. The property, therefore, remained hers so long as she lived, and passed to her executor after her death.

*Judgment on the verdict.*