## McCandless v. Young, etc.

*Alvah M. Shumaker* and *Armand R. Cingolani*, for plaintiff.

*Caldwell & McFate*, for intervening defendant.

*Barletta & Reeher*, for defendant.

BRAHAM, P. J., November 19, 1952.—Plaintiff, M. Jeanne McCandless, claiming to have received a Pontiac sedan as a gift from Arthur W. Cratty, now deceased, brought an action of replevin against R. A. Young, the dealer from whom Cratty bought it and who held it for Cratty at the time of his death. Helen

Cratty, widow and personal representative of the deceased, was allowed to intervene and, upon an agreement by all parties to pay Young's storage charges, became the real defendant.

In the issue thus framed the verdict of the jury was for plaintiff. Defendant, Helen Cratty, administratrix, has filed motions for judgment non obstante veredicto and for a new trial.

A brief statement of the facts is necessary to a discussion of the motion for judgment n. o. v. In August of 1949 Arthur W. Cratty of Butler, a married man with two daughters and a son but who was separated from his family, bought a Pontiac sedan from R. A. Young, a dealer in Ellwood City. He did not take delivery then but made arrangements for Young to store the car. He never gave any instructions as to delivery but on December 5th wrote Young a letter, as follows:

"R.D. #7, Butler, Pa. December 5, 1949
"J. R. Young Garage
Ellwood City
Pennsylvania
"Dear Sir:

"Under the present conditions I had to sell my 1949 Pontiac which you have stored for me. Please send all the necessary papers that are to be signed to me so that I may get things settled as soon as possible. I am selling it to Jeanne McCandless.

"I am sick and unable to get out of the house so please send the papers immediately.

"The car will be gotten before Christmas.

"I would appreciate it very much if you would keep this matter quiet.

"May I hear from you soon.

(signed) ARTHUR W. CRATTY"

The letter was not in Cratty's handwriting, but was signed by him.

In response to this letter Young took one of the blanks which automobile dealers are permitted to use in obtaining a first certificate of title to an automobile, signed his name as seller and sent the blank to Cratty. He did not fill in the name of the purchaser and did not make affidavit to the transaction.

M. Jeanne McCandless claims to have been housekeeper for Cratty. She is about the age of Cratty's daughters. His parents testified for plaintiff, but his wife, son and daughter for defendant. According to defendant's evidence, Cratty was estranged from his wife and children because of his relations with Miss McCandless and, according to plaintiff's evidence, she was accustomed to come and stay with him at least over the weekends. Defendant's evidence makes out a case of regular cohabitation between Cratty and the girl and the only reasonable inference, even from plaintiff's evidence, is that the relationship was meretricious.

About the first of October Arthur Cratty was mysteriously injured by being struck over the head. He was confined to his home until Saturday, December 10, 1949, when he was taken to the hospital where he died on Monday, December 12, 1949. His parents were with him at the time of his death.

Plaintiff claims to have received the automobile as a gift from Arthur Cratty before he went to the hospital. She makes no claim to have bought it. To establish her contention she relies chiefly upon the testimony of Clara Cratty and James P. Cratty concerning declarations of their son made on Friday and Saturday. They say that plaintiff also got money from him at that time amounting to about $1,500.

Decedent died at about 9 o'clock Monday evening, December 12th. At about four o'clock on the morning of Tuesday the 13th M. Jeanne McCandless, accompanied by her brother, an undentified man, and the

parents of the deceased broke into the home of the deceased. They did it, according to the testimony of the mother of the deceased, in order that Miss McCandless might "help herself to whatever she could get before the administrator could get there". Plaintiff's witnesses say that she took nothing but her clothes but Carol Stubenbordt, a friend of plaintiff but witness for defendant, says that plaintiff admitted to her the taking of a quantity of money.

After these events plaintiff went to R. A. Young, the auto dealer, and demanded the Pontiac sedan. She had no certificate of title and Young refused to give the automobile to her. Plaintiff next proceeded to get a certificate of title. She had obtained at some time possession of the application for a certificate of title, signed in blank by Young. She took it to a justice of the peace in Butler and had it completed so as to be in form an application for a certificate of title in her name which was regular on its face. The evidence is silent as to who wrote the name of M. Jeanne McCandless in the blank prepared for the purchaser's name. The application shows that R. A. Young appeared before the justice of the peace on December 17, 1949 and swore to the affidavit, but this is false. He never appeared before the justice of the peace. In due course plaintiff received a certificate of title for the automobile.

Two observations must be made on this record. First, as a matter of law, "transactions by which a decedent shortly before his death practically strips himself of all his available property are naturally regarded with suspicion, and are to be scrutinized with a keen and somewhat incredulous eye": Wise Estate, 182 Pa. 168, 171; Katz, admrx., v. Lockman, 356 Pa. 196, 203. Second, as matter of fact, the evidence indicates that Arthur Cratty intended Miss McCandless

to have the automobile at some time and on some terms. The question is therefore whether he made a completed gift to her in his lifetime and in considering the motion for judgment n. o. v. this evidence must be considered in the light most favorable to plaintiff.

The general principles governing gifts inter vivos have been recently given authoritative statement by Mr. Justice Stearne in Tomayko v. Carson, 368 Pa. 379, 383, as follows:

"A claim of a gift *inter vivos* against the estate of the dead must be supported by clear and convincing evidence: Leadenham's Estate, 289 Pa. 216, 137 A. 247; Snyderwine, Admrx. v. McGrath, 343 Pa. 245, 22 A. 2d 644. In order to effectuate an *inter-vivos* gift there must be evidence of an intention to make a gift and a *delivery*, actual or constructive, of a nature sufficient not only to *divest the donor* of all dominion over the property but also *invest the donee* with complete control over the subject matter of the gift: Pyewell's Estate, 334 Pa. 154, 5 A. 2d 123; Rynier Estate, 347 Pa. 471, 32 A. 2d 736. It is claimant's burden to prove by *clear and satisfactory evidence* that a gift in fact was made: Sullivan vs. Hess, 241 Pa. 407, 88 A. 544; Kata Estate, 363 Pa. 539, 70 A. 2d. 351; Lochinger vs. Hanlon, 348 Pa. 29, 39, 33 A. 2d 1. Cf. Campbell's Estate, 61 D. & C. 19".

Declarations of decedent are competent to prove a gift. Declarations of a purpose to make a gift do not suffice, the intention must be shown to be operative at the time of the alleged gift: Smith's Estate, 237 Pa. 115, 119. Declarations that a gift has been made stand on somewhat higher ground but even these, unaccompanied by evidence of some species of delivery, are insufficient: Tomayko v. Carson, 368 Pa. 379, 384, 385.

With these principles in mind we approach decision of the sufficiency of plaintiff's proof of a parol gift to

her in the lifetime of Arthur Cratty. At the outset the evidence of Frank Wigton establishes only the general disposition of decedent to give the automobile to plaintiff. Cratty said he "was buying Jeanne a good automobile". This brings us to the testimony of decedent's mother, Clara Cratty. She testified to early declarations in which decedent said he had told his brother to go and get the car; but the brother never went. The brother did not appear as a witness. In any event those statements referred to a transaction purely executory (some statements were made before the car was bought) and did not constitute delivery. Clara Cratty's testimony was in general quite vague and uncertain. She thought her son turned some checks over to plaintiff at the last. As far as she knew it was cash, it might have been checks. When asked what her son had said about the automobile or the title certificate her reply was that he told her on Saturday that he had "fixed the thing". Again she reported him as saying as he walked out: "I think I have everything fixed the way I want it". Clara Cratty could not identify any paper connected with the automobile, she never saw her son sign anything, she never saw him hand Jeanne McCandless anything. She testified, however, that he said he had signed what he wanted plaintiff to have.

James P. Cratty, father of deceased, said his son, Arthur, told him before he was hurt that he had bought the car for this girl. After his injury Arthur said he was going to give it to her. Arthur told his brother Roy to get the automobile for him because he was not able. The testimony of the father concerning delivery of the papers is all plaintiff has to rely on. The gist of it is as follows:

"Q. And what, if anything, was said or done by your son concerning those papers from the Young garage?

"A. Well, now he had them and then he had two or three checks, two checks anyway, and he endorsed those checks before he went to the hospital.

"Q. Before he went to the hospital?

"A. Yes, sir.

"Q. And did you see him deliver those checks to Jeanne McCandless?

"A. He was very bad, you know, and he had kept them there in the cupboard and Miss McCandless was there and she got them that day.

"Q. And did you see them delivered to her by your son?

"A. Well, not just exactly, but I seen him getting the checks ready, endorsing the checks and he said that they was for her.

"Q. And what did he say or do concerning the papers regarding the Pontiac car?

"A. Well, he had those right along with the checks and he got them on Friday and he had them ready, now I don't know, he said—endorse them or anything about it, but he had them, the checks, or the applications— application for the title, is that right?

"Q. And what did he do with that—those papers?

"A. Well, we started—he was keeping them right there in that cupboard and the lady there was, well, she was crying at the time, and he left it for her, he said so.

"Q. What did he say about it?

"A. He said that these was for her.

"Q. Those were for her?

"A. Yes, sir."

But the father could not identify the papers. Apparently he saw nothing signed. He said the son told him he had in his hands the checks and the papers for this car. The father summarized by saying "he intended to give her this car but he did not get it done as he expected to".

This evidence fails to identify any paper connected with the Pontiac sedan except as identification may be gleamed from some uncertain evidence about the receipt of papers from Mr. Young. The evidence fails to show any actual delivery to plaintiff. Whether the application for title, signed in blank by Mr. Young was among the papers placed in the cupboard is left to inference. Whether plaintiff got the application there is not stated. Whether she got it before or after the death of Arthur Cratty is not shown. Under such circumstances the availability of a normal and effective manner of delivery is important. Whatever Arthur Cratty's sentiments about Miss McCandless and his intentions with respect to giving her the automobile, he had not given it to her between August, when he bought the automobile, and December 9th, the day before he went to the hospital. If, however, he finally decided, on December 10th, before he went to the hospital, to give Miss McCandless the automobile and if he regarded the application for title as of some significance with respect to the title, why did he not give the paper to her personally? According to Clara Cratty plaintiff was right in the room with deceased; according to James P. Cratty she was in the same room part of the time and in the next room part. Why put the papers in a cupboard for her when she was right there to receive them? The language of Smith's Estate, Alward's Appeal, 237 Pa. 115, 119, is pertinent here:

"The question at once arises in the mind, if this was intended as an act of delivery, why did the donor adopt any such vague and equivocal method of asserting it when so many more direct, unqualified and equally convenient methods were open to her? To invest the ordinary purchaser of personal property with right of ownership as against third parties, the law requires that the vendor shall have done everything in his power to effect a delivery to his vendee. Shall we say that

any less stringent rule is required for the protection of dead men's estates against claims resting upon alleged gift?"

At this point consideration must be given to the nature of the thing delivered. In the case at bar actual delivery of the automobile would have been conclusive. The delivery of an incompleted application for a certificate of title has no such effect. The act requires the application to show the name of the owner and to be verified by the oath of the applicant: Act of May 1, 1929, P. L. 905, sec. 202, as amended 75 PS §32. Section 212 of the act as amended, 75 PS §42 provides:

"(b) No person shall make application for, or assign or physically possess, a certificate of title, or direct or allow another person in his employ or control to make application for, or assign or physically possess, a certificate of title, unless the name of the person who is assignee, purchaser or lessee is placed on the assignment of certificate of title simultaneously with the name of the assignor, seller or lessor."

Under the Act of June 30, 1919, P. L. 702, which first provided for a certificate of title to an automobile it was held that any contract for the sale of an automobile which did not comply with the requirements as to a certificate of title would not be enforced: Brenner v. Pecarsky, 86 Pa. Superior Ct. 414; Miles v. Zorzi, 88 Pa. Superior Ct. 231. Under the Acts of May 24, 1923 P. L. 425, and April 27, 1925, P. L. 286, this rule was changed. In Braham & Company v. Steinard-Hannon Motor Co. et al., 97 Pa. Superior Ct. 19, a dealer did not secure a title to a second-hand car as required by the act but, having received the certificate of title endorsed in blank, it inserted the name of its bailee as purchaser. A new title was issued in the bailee's name. Upon replevin by plaintiff, the assignee of the bailor, the assignee prevailed. The court ruled that the failure to comply strictly with the provisions

of the act as to assignment of the certificate and registration did not forfeit plaintiff's rights in the motor vehicle.

In Sidle v. Goldman, 107 Pa. Superior Ct. 13, a dealer who had bought a second-hand car and after paying off an encumbrance had received a certificate of title therefor, was held entitled to have his case submitted to a jury as against a defendant who had possession of the car. The court pointed out that the Act of 1929 enlarges the scope of the certificate. Automobile Banking Corporation v. Atlas Automobile Finance Corporation et al., 129 Pa. Superior Ct. 501, 509, refers to the less stringent provisions of the earlier acts. A certificate was required of a dealer in Commercial Credit Company v. McDermott et al., 144 Pa. Superior Ct. 281, but in Herring v. Shullo et al., 149 Pa. Superior Ct. 345, substantially the rule of Braham & Co. v. Steinard-Hannon Motor Co. is restored. In Rice Street Motors, to use, v. Smith et al., 167 Pa. Superior Ct. 159, it was held that a certificate of title is an indicium of ownership, citing Majors v. Majors, 349 Pa. 334.

Since the amendment of June 27, 1939, P. L. 1135, 75 PS §31, dealers have not been required to obtain certificates of title to new vehicles "until and before sale thereof". Therefore when R. A. Young signed the application he did the appropriate thing to initiate the transfer of legal title to Arthur Cratty. His act did not, however, invest the application with the status of negotiable paper so as to give the holder of it prima facie title. Above all it gave plaintiff or other person who got hold of the application no right to take it and by obtaining a false affidavit from a magistrate apply for and secure a certificate of title for which a prima facie status might be claimed. This is the meaning of the trial judge's ruling on defendant's second point.

The ruling of the court in Braham & Co. v. Steinard-Hannon Motor Co. et al. and the cases which followed it are cases of executed transactions where equities of payment, possession, and the like have intervened. Where there is a dispute between the claims of equitable ownership and the claims of legal title by a certificate, the decision may vary. But where, as here, the law is called upon to intervene in the middle of a transaction, it will not allow a claimant such as plaintiff to profit by a violation of a statute nor will it recognize a title so obtained.

This does not mean that plaintiff's claims to a constructive delivery of this automobile may not be considered. Here the letter of Arthur Cratty to R. A. Young must be considered. This letter establishes a number of things: First, that he was selling the car to plaintiff, not giving it; second, that he considered the necessity of signing papers to effect the transfer; third, that delivery was to be made before Christmas. If Mr. Young, in response to this letter, had filled in the name of M. Jeanne McCandless as purchaser, the letter and the completed application would make out plaintiff's case. Indeed if the letter indicated Cratty's intention to give the automobile to plaintiff, the letter itself might suffice. But a sale is not a gift. The letter states Cratty's idea that he must sign something. If he was about to sell to plaintiff he may have wanted a title in himself in order to place an incumbrance on the title when he sold.

Next we come to two questions of evidence. First, plaintiff avers that error was committed by allowing the widow and children of Arthur Cratty to testify, plaintiff contending that the Witness Act of May 23, 1887, P. L. 158, sec. 5(e), 28 PS §322, disqualifies them. Plaintiff has cited a number of cases but all these are found, upon examination, to be cases of

completed transactions. In each case the personal representative as plaintiff was trying to get back property in the possession of one who received it, allegedly as a gift, during the lifetime of the deceased. Among these cases are King et al. v. Lemmer, 315 Pa. 254, where children by a first wife sought to set aside gifts to the wife on the ground that the donor lacked mental capacity. The wife had possession, the transaction was closed and of course the children were incompetent to upset it. Similar in character are: Crothers v. Crothers, 149 Pa. 201; Long v. Long, 361 Pa. 598. Two more of plaintiff's cases demonstrate how she relies on settled and closed transactions. In Fiscus v. Fiscus, 272 Pa. 326, plaintiff was a son who sought to set aside a deed seven years after his parents had delivered it to the daughter who cared for them and in Roberts et al. v. Washington Trust Company, 313 Pa. 584, it was sought to set a deed aside for alleged forgery 30 years after its date. Of course plaintiffs were incompetent as witnesses.

The case at bar is quite different. Here the possession of the automobile was in Arthur Cratty until he died. R. A. Young held it as his agent. The title was in Cratty's name. It was freely admitted at trial that plaintiff obtained the certificate of title after the death of Cratty. Thus, although plaintiff's certificate of title was sufficient to make a prima facie case at the outset of the trial (Sidle v. Goldman, 107 Pa. Superior Ct. 13), it was not sufficient to disqualify Arthur Cratty's next of kin after it appeared that possession of the automobile and record title were in decedent up to the time of his death. Under such circumstances it was plaintiff who was disqualified. Possession, we apprehend, is decisive not only as to the jurisdiction of the courts (Cutler's Estate, 225 Pa. 167; Brown's Estate, 343 Pa. 230) but also as to the disqualification of witnesses.

The second question as to the evidence and the one which causes most difficulty is whether judgment n. o. v. should be entered or a new trial granted.

The compelling reasons for a new trial are the weight of the evidence and the doubt whether the instructions on the burden of proof were sufficient. As to the weight of the evidence, the declared intention of decedent to sell the automobile to plaintiff, the lack of any evidence of sale, the manifest infirmities of the evidence as to a gift, and the sinister implications of plaintiff's own evidence that plaintiff with four others broke into the home of the deceased within a few hours after his death in order to get what plaintiff wanted before the administrator took charge; all these prevent our entering judgment for plaintiff on this verdict.

Is there a duty upon the court notwithstanding our feeling as to the preponderance of the evidence against a parol gift, to grant a new trial rather than to enter judgment for defendant? In other words does the scintilla rule of Nanty-Glo Boro. v. American Surety Co., 309 Pa. 236, apply? The scintilla, if it exists, or, shall we say, if it gleams, emanates from the testimony of James P. Cratty concerning statements of deceased to the effect that he had made a gift to plaintiff. There is absolutely no evidence as to the identity of any title paper unless it is found in the admission of the deceased as reported by his father. Assuming that he told the father the application was with the checks and the papers were put in the cupboard, was this in fact done? Was the application there? Did plaintiff get it there? No one knows. Complete delivery must be fully proved or there is no delivery. There can be no guessing when it comes to proving a gift inter vivos against a dead man's estate: Brown's Estate, 343 Pa. 240.

Plaintiff's counsel in their helpful brief argue for the sufficiency of admissions of an executed gift to make out a prima facie case, citing Malone's Estate,

8 W. N. C. 179, 182, decided in 1880; Jacques v. Fourthman, 137 Pa. 428; Sourwine et ux., v. Claypool Exec., 138 Pa. 126; Adam's Estate, 139 Pa. Superior Ct. 512, and Leadenham's Estate, 289 Pa. 216. Each of these cases involved clear evidence of delivery not found in the case at bar and all are distinguished in Tomayko v. Carson, 368 Pa. 379, 384. In this latter case the declarations were to the effect that decedent had given claimant the contents of a safe deposit box and had given him a key to it. The corporate stock involved was indeed in a safety deposit box in the joint names of decedent and claimant. The Tomayko case may be taken as establishing that loose and vague declarations "do not constitute clear and convincing evidence of an inter vivos gift."

Clear and convincing evidence is required to show a gift inter vivos: Kata Estate, 363 Pa. 539; Lochinger v. Hanlon, 348 Pa. 29, 39; Sullivan v. Hess, 241 Pa. 407. The court must make an initial decision as to whether enough clear and convincing evidence to go to the jury has been shown, then the jury must determine the facts from that evidence: Snyderwine, Admx. v. McGrath, 343 Pa. 245, 251. In the Snyderwine case the trial judge submitted the case to the jury for decision on the weight of the evidence rather than on clear and satisfactory or clear and convincing evidence. The case involved a receipt which might have been evidence of either purchase or gift; the case had to go to the jury.

In the case at bar the evidence of delivery is far from satisfactory, nevertheless the letter of December 5, 1949, does indicate in general the intentions of the deceased with respect to the automobile. The principles of the Snyderwine case as to instructions regarding the burden of proof require at least a new trial. Accordingly, we make the following

*Order*

Now, November 19, 1952, the motion for judgment non obstante veredicto filed by Helen Cratty, administratrix of Arthur Cratty, deceased, is overruled and refused but her motion for a new trial is granted.