## Marino Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Philip Richman*, for petitioner.

*Pershing W. Calabro*, for respondent.

LEFEVER, J., March 26, 1954.—The question before the court is whether a State-incorporated, federally insured savings and loan association shall be ordered by this court to pay to the executor of a deceased shareholder the value of his shares where the passbook containing the "Optional Payment Share Certificate" has been lost or destroyed.

Decedent at the time of his death was a shareholder in the Marconi Savings and Loan Association. That association had issued to him passbook no. N.S. 543, which contained therein an "Optional Payment Share Certificate", providing:

"This certifies that Carmine Marino has subscribed for and made the initial payment upon an Optional Payment Share or Shares and is a member of the undersigned, an association incorporated under the laws of the Commonwealth of Pennsylvania. This certificate is issued, and by the acceptance hereof is held, subject to all provisions of the laws of the Commonwealth of Pennsylvania, the articles of incorporation and by-laws of the undersigned, and is transferable on the books of the undersigned in accordance with the Uniform Stock Transfer Act as applicable in Pennsylvania, and the undersigned may treat the holder of record hereof as the owner for all purposes without being affected by any notice to the contrary until this certificate is transferred on the books of the undersigned. Certificates will not be transferred unless and until the transferee has made proper application for membership in, and has been accepted as a member of, the undersigned."

The passbook also contained a "Transfer of Share Account and Membership", reading as follows:

"For value received the undersigned hereby sells, assigns, and transfers to ——————————— the share account represented by the within certificate of *Marconi Savings and Loan Association* and does hereby irrevocably constitute and appoint the officers of said Association to transfer said share account on the books of the said Association."

The bylaws of the association are silent as to any procedure or requirements to obtain a new passbook or to withdraw funds where the passbook is lost or destroyed.

At the time of his death decedent was credited on the books of the association with the sum of $14,-335.28. His executor notified the association of decedent's death, furnished it with a short certificate evidencing his appointment, and notified it that the aforesaid passbook was lost or destroyed. The association permitted the executor to withdraw $5,335.28. There remains a balance of $9,000 which, together with dividends thereon, now totals $9,272.03.

The inventory and appraisement and the executor's final account listed the shares in the association as an asset of the estate at a valuation of $14,335.28. The account was audited, an adjudication confirming the account was filed and a schedule of distribution was approved. The schedule does not mention the shares in the association, per se, but apparently includes their value as part of the cash balance for distribution in the amount of $29,492.58.

Subsequent to the approval of the schedule of distribution the executor made demand upon the association for payment of the $9,272.03 balance. The association refused to make payment "unless the deposit book, in which the share certificate is included, is produced, or the provisions of the Uniform Stock Transfer Act are otherwise complied with". Thereupon, the executor filed with this court "Petition for citation for payment of moneys on deposit in decedent's name in Marconi Savings and Loan Association". In that petition, he alleged that he has made "diligent and careful search for the said book, has been unable to find it, and hence avers its loss or destruction". An answer was filed by the association, which, inter alia, admitted the averment. The matter is before us on petition and answer.

"While the orphans' court possesses extensive powers to assist a decedent's personal representative to acquire control of property rightfully belonging to the estate, its jurisdiction being entirely of statutory

origin, these powers may be invoked only within well defined ultimate limits, one of which is that the orphans' court cannot determine the validity of a disputed debt to an estate. . . . 'If the property was in decedent's possession, either actually or presumptively, at the time of his death, or thereafter at any time came into the possession of his personal representative as part of the estate for purposes of administration and distribution, the jurisdiction of the orphans' court attaches, at least preliminarily . . .' ": Brown's Estate, 343 Pa. 230, 234, 236 (1941). See also Fell Estate, 369 Pa. 597 (1952).

In McHenry Estate, 65 D. &. C. 330 (1948), this court directed two saving fund societies to pay the entire amount deposited in savings fund accounts to substituted trustees without surrender of the savings fund books, which an aged trustee stubbornly refused to surrender. We said (page 334):

"In the case before us there is not only no substantial dispute of title but no dispute at all, for we do not understand that the savings banks here claim any title in themselves. The owner's title does not depend upon the production of the books when title can be otherwise established."

In Hegerman's Estate, 28 Dist. R. 384 (1919), this court directed the issuance of an Electric and People's Traction Company stock trust certificate to replace a certificate which was alleged to have been lost or destroyed, stating (page 388):

"What are the controlling principles in this matter? We have a fiduciary accountable to this court, an asset, the title to which is in the fiducial estate, not even a color of dispute as to the title, and the impossibility of making a complete distribution of the assets of this estate for lack of a muniment of title; hence, we conclude that this court has jurisdiction."

In the instant case there is no dispute as to decedent's title. It is admited that decedent "was a depositor" and the registered owner of passbook no. N.S. 543 of Marconi Savings and Loan Association; and that "decedent had at the time of his death a deposit in the said association of $14,335.28 of which he was the owner". It is further admitted that "the amount in said account is an asset of the estate of said decedent's title. It is admitted that decedent "was a dethe administration of the estate.

Finally, the association concedes that the passbook is "lost or destroyed". It would appear, therefore, that this court has jurisdiction over the subject matter and should order the association to pay to the executor of this estate the balance due on its books.

This raises the further questions as to whether such an order will subject the association to loss and, if so, what, if any, protection should be afforded it.

The passbook was last seen in the possession of decedent about a year prior to his death. It is conceivable, therefore, that decedent may have made an inter vivos gift of the passbook or sold and transferred it for valuable consideration to someone who may not yet have presented it to the association; and that the gift or sale might be held valid despite the failure of the donee or assignee to notify the association and make "proper application for membership" in the association as required by the above-quoted language of the "Optional Payment Share Certificate". It is not necessary for us to decide at this time whether such third party would have any rights or whether this court has the power finally to foreclose those rights. Certainly, we should not exercise such power ex parte.

It seems highly unlikely that such a claim will ever be made. If so, the court having jurisdiction thereof may be required to determine whether passbook no.

N.S. 543 is a certificate within the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, 15 PS §301. Section 17 of this act provides:

"Where a certificate has been lost or destroyed, a court of competent jurisdiction may order the issue of a new certificate therefor on service of process upon the corporation and on reasonable notice by publication, and in any other way which the court may direct, to all persons interested, and upon satisfactory proof of such loss or destruction, and upon the giving of a bond, with sufficient surety to be approved by the court, to protect the corporation or any person injured by the issue of the new certificate from any liability or expense which it or they may incur by reason of the original certificate remaining outstanding."

It would seem that the provisions of this act are applicable to the shares in a savings and loan association. See Citizen's National Bank of Irwin v. Irwin Building & Loan Association, 316 Pa. 536 (1934).

The Building and Loan Code of May 5, 1933, P. L. 457, as amended by the Act of March 15, 1937, P. L. 63, 15 PS §1074-611, provides:

"B. Except as otherwise specifically provided in this act, the transfer of shares for which share certificates have been issued, and the share certificates representing them, may be regulated by the by-laws, provided such by-laws are not inconsistent with the provisions of the Uniform Stock Transfer Act . . .".

"This effects a dovetailing of this Code and the Uniform Stock Transfer Act, 15 PS §301, et seq., without unnecessary repetition here of the many detailed provisions for the transfer of shares contained in that act": 1 Segal, Pennsylvania Banking and Building and Loan Law, page 471.

The "Optional Payment Share Certificate" in the passbook specifies that it is "transferable on the books of the undersigned in accordance with the Uniform

Stock Transfer Act as applicable in Pennsylvania." Decedent accepted membership in the association and ownership of the certificate in question upon this express term. In effect, decedent and the association incorporated by reference into their contract with each other the quoted provisions of section 17 of the Uniform Stock Transfer Act. Issuance of a new certificate for a lost or destroyed one is, in effect, a "transfer". It follows that the court having jurisdiction of the matter might well require the association to pay a second time. Irrespective of the final outcome of the case, the association will be put to the expense of litigation, including attorneys' fees, costs, etc.

It is unfortunate that the association decided to include an "Optional Payment Share Certificate" in its passbook without providing in its bylaws the procedure and requirements for replacing a lost or destroyed passbook. However, unlikely as it may be that a claim by a third party will be made against the association, it is entitled to protection against loss flowing from such claim. The responsibility for such loss should fall upon the person at fault. Decedent lost or destroyed the passbook, not the association. Decedent is not here to reveal what happened to the passbook. Consequently, his estate must bear the burden of the expense incident to its absence. Elemental justice and fairness require this conclusion; so do the Uniform Stock Transfer Act and Hegerman's Estate, supra.

We conclude, therefore, that the association should be directed to pay to the executor the balance due decedent on its books, and that the association is entitled to protection against loss by reason of possible future claims and litigation arising therefrom.

Accordingly, it is hereby ordered and decreed that the Marconi Savings and Loan Association shall deliver to the executor of decedent's estate the balance due decedent on its books, provided, however, (1) that

the executor shall first advertise once a week for three successive weeks both in The Legal Intelligencer and in a Philadelphia newspaper of general circulation the loss or destruction of passbook no. N.S. 543, in accordance with the requirements of the Uniform Stock Transfer Act; (2) that he shall file with this court proof of such advertising, and (3) that he shall deliver to the association a bond with surety, to be approved by the court, in the amount of $14,000 (the amount requested by the association), to indemnify it against loss arising from such payment.